## JONES ET UX. v. BOWMAN.

HABEAS CORPUS—INFANTS—CUSTODY OF CHILDREN—EFFECT OF RELIGIOUS OPINIONS OF CONTENDING PARTIES—EFFECT OF APPOINTMENT OF GUARDIAN IN ANOTHER STATE—INTEREST OF CHILD—JURISDICTION.

1. In a proceeding for the custody of a minor orphan child, the religious opinions of the contending relatives will not be considered.

2. In a habeas corpus proceeding involving the custody of a minor orphan child, the welfare and best interest of the child should be the sole consideration.

3. The appointment of a guardian of the person of a minor orphan child by the courts in one state will not preclude the appointment of another person by the courts in another state into which the child has been brought.

4. In a habeas corpus proceeding involving the custody of a minor orphan child, the court will not be bound by an appointment by the Probate Court in another state of a guardian of the person of such child as against what is deemed the best interest of the child.

5. In a judicial proceeding involving the custody of a minor orphan child, where there are other children of the same family, the court will, if possible, make such disposition as will keep the family, or those remaining, together.

6. Notwithstanding the appointment of the father's sister as guardian of a minor orphan child by the Probate Court in another state, where the father, at the time of his death, resided with his children, the child having been brought into this state shortly after the father's death by an older brother and cared for here by an aunt on the mother's side and her husband, the latter having been appointed guardian

here by the proper court, *Held,* that the latter should be awarded the custody of the child, it appearing that he was able and willing to properly care for and educate her, and to keep the family with her, and that the father's sister was past middle age, unmarried and without a home, and dependent upon her own labor for support, and that the father's expressed wish had been that the child be removed from his sister's control and influence.

`[Decided July 6, 1904.]                    (77 Pac., 439.)

ERROR to the District Court, Johnson County, HON. JOSEPH L. STOTTS, Judge.

Habeas corpus for the custody of Ida May Bowman, a minor orphan child. From a judgment in favor of the petitioner, Margaret H. Bowman, the respondents, John A. Jones and Ella Jones, prosecuted error. The material facts are stated in the opinion.

*Parmelee & Hill* and *J. W. Lacey,* for plaintiffs in error.

(Original brief.) In the admission of most of the testimony objected to by the plaintiffs in error there was a disregard of all rule which was not authorized even under the most liberal statement of the rule in habeas corpus cases, much of it being hearsay and entirely foreign to any issue in the case.

The petitioner, Miss Bowman, had not been appointed guardian in Minnesota, neither had she applied for letters at the time of the removal of the child from that state. If the removal was lawful, as we contend it was, and was permanent in character, as the testimony discloses, then the Probate Court of Minnesota was without jurisdiction. (State v. Giroux, 47 Pac., 800.) If Miss Bowman was not the legal guardian of the child, then the custody of plaintiffs in error was in no respect unlawful. The petitioner's authority was at all events local, and her power over the ward confined to the state of her appointment. (Story Conf. Laws, Sec. 499.) The courts of this state had jurisdiction, notwithstanding the appointment of a guardian

elsewhere, to appoint a guardian here; and the custody of such guardian could not in any sense be said to be unlawful. (Woerner on Guardianship, 159.) A demand was necessary before bringing proceedings to obtain the custody of the child; and none being made, judgment against the respondents was for that reason erroneous. (9 Ency. Law, 242.) At least the judgment would be erroneous so far as it required the payment of costs by the respondent. The welfare of the child is the paramount consideration and must control the custody even as against the legal guardian. (Woerner on Guardianship, 159; *In re* Welch, 74 N. Y., 299; Wilcox v. Wilcox, 14 id., 576; People v. Watts, 122 id.; *In re* Bullen, 28 Kan., 781; Church on Hab. Corp., Sec. 446; Hochheimer Custody of Infants, Secs. 44, 46.) Even if Miss Bowman had been at the time of the child's removal its legal guardian, and the plaintiffs in error had forcibly removed the child (which they did not), it does not follow that she should be restored to Miss Bowman. (Foster v. Alston, 6 How. (Miss.), 406.) There can be no question from the evidence in the case that the child would have by far the best advantages in the home of plaintiffs in error, where she was surrounded by all the comfort and refinement which a moderate competence could secure. Moreover, she was there subject to the influences which pervade a peaceful and happy home, and associated with her brothers. All that would be lost to her if she was placed in the custody of the petitioner, who has no resources and no home; though she claims to be able to support herself and her child by her skill with the needle. So far as appears, however, she has never supported even herself, and during the periods when she was working her income appears to have been precarious. It is not to be forgotten that both parents of the child expressed an unwillingness that she should be placed in charge of the training and religious instruction of the petitioner. Preference will be given to one of the same religion with the parents in selecting the custodian of a child (*In re* Doyle, 16 Mo. App., 159), though

such consideration would not necessarily control when the physical and general welfare of the child demanded a different disposition.

The right of the brother, Oscar, who was impelled by his aunt's threat to take the child away from him, to act promptly and decisively in removing the child from his aunt's custody, were at least equal to the rights of the latter; and he was doing that only which his father had enjoined upon him.

(Supplementary brief.) The child, if given into the custody of Miss Bowman, will be cut off from all other relatives, consisting of two brothers, three uncles and three aunts. The appointment of Mr. Jones as guardian in this state was authorized under the statute. (R. S., Sec. 4866; *In re* Raynor, 74 Cal., 421.) The interests of the child are paramount, and neither guardian nor relative has any rights which can be permitted to stand in the way of the child's interest. (Matter of Heather Children, 50 Mich., 261; Garner v. Gordon, 41 Ind., 92; *In re* Bullen, 28 Kan., 557.) The three children should be kept together. (English v. English, 32 N. J. Eq., 758; Lusk v. Lusk, 28 Mo., 91; 2 S. & R., 174.)

Because a judge in chambers is authorized to hear a habeas corpus proceeding is not a sufficient reason for denying proceedings in error when the court has in fact heard the cause. (Bank v. Moorcroft Ranch Co., 5 Wyo., 50.) This court has power to review the judgment of the court below in the habeas corpus proceeding. (R. S. 1899, Secs. 4247, 4248, 4249; Const., Art. 5, Secs. 2 and 3; 6 O. St., 55; Wilcox v. Nolze, 34 id., 520; Yates v. People, 6 Johns., 337; *In re* White (Neb.), 51 N. W., 287; State v. Atwater, id., 1073; *In re* Van Sceiver (Neb.), 60 N. W., 1037; State ex rel. McCaslin, 65 Miss., 93; Steele v. Shirley, 13 S. & M. (Miss.), 382; Covington v. Arrington, 32 Miss., 144; State v. Hill, 10 Minn., 63; *In re* Hicks, 20 Mich., 129; State v. Crocker, 5 Wyo., 385; Miskimmins v. Shaver, 8 Wyo., 392.) Notwithstanding that the hearing

was by a court and not by a jury, the admission of incompetent evidence can be taken advantage of on error. (Est. of James, 124 Cal., 653; Bough v. Geiselman (Tex.), 55 S. W., 615; Carroll v. Diemel, 95 N. Y., 252; Gordon v. McCall (Tex.), 48 S. W., 1111; Brigham v. Golt, 3 N. Y. Supp., 518; Bank-Note Co. v. Ry. Co., 18 id., 532; Spanagel v. Dellinger, 38 Cal., 278; Torrance v. Bank (Kan.), 71 Pac., 235.) The rule adopted by some courts in equity cases, where the court itself weighs the evidence, is not applicable here, since causes in equity are treated the same as causes at law for appellate purposes, and bills of exception must be filed in equity cases the same as in others. (Conway v. Smith Merc. Co., 6 Wyo., 327.)

*Gibson Clark*, for defendant in error.

A determination by a court or judge of habeas corpus proceedings is not a final order upon which proceedings in error may be predicated, because it does not affect a substantial right nor determine the action. (21 Ency. Law (1st Ed.), 129; Miskimmins v. Shaver, 8 Wyo., 329; 11 Ency. Pl. & Pr., 820; 9 id., 1072; *Ex parte* Thompson, 93 Ill., 89.) The right of review in such a case does not exist in the absence of statute to that effect. The constitutional writ, to accomplish the end intended, viz: to secure immediate relief from illegal confinement, must necessarily be vigorous and summary. Again, the writ may be issued and the matter determined by a judge in vacation, from whose decision there could clearly be no appeal. (Hammond v. People, 32 Ill., 446.) The awarding of the custody of the child by the District Court was the exercise of judicial discretion and, therefore, not subject to review on error. (Elliott on App. Proc., Sec. 598; Powell on App. Proc., 322; Church on Hab. Corp., Sec. 389; Jenkins v. Clark, 71 Ia., 552; People v. Brown, 103 N. Y., 684; *In re* Welch, 74 id., 299; State v. Bechdel, 38 Minn., 278; People v. Watts, 122 N. Y., 238; State v. Noble, 70 Ia., 174.) The fact that incompetent testimony has been received is

not sufficient ground for reversing the judgment when the case is tried without a jury; in such case the appellate court will give no weight to such testimony. (Ritter v. Schenck, 101 Ill., 387; Dewey v. Allegre, 37 Neb., 6; Frisk v. Reiglman, 75 Wis., 499; Kleimann v. Geiselmann, 114 Mo., 437; 2 Ency. Pl. & Pr., 567.)

The domicile of the children is that of the father. (10 Ency. Law (2d Ed.), 112.) Upon the death of the father and mother, the children became wards of the Probate Court having jurisdiction over said domicile, and that court was the one to appoint a guardian for such children. (Jenkins v. Clark, 71 Ia., 552; Wells v. Anderson, 60 Miss., 379; In re Hubbard, 82 N. Y., 90; Lewis v. Costello, 17 Mo. App., 593; Montgomery v. Smith, 3 Dana, 395; Allgood v. Williams, 92 Ala., 551; De Jarnett v. Harper, 45 Mo. App., 415; Woerner on Guardianship, Sec. 26; 9 Ency. Law (1st Ed.), 94; 15 id. (2d Ed.), 33, 34.) That court having appointed the petitioner as guardian of the child in controversy, the courts in this state have no power to act in the matter of guardianship, since neither residence, property or domicile of the minor lie within the jurisdiction of any court in this state. Moreover, the person of the ward was unlawfully in this state. A minor cannot, of his own volition, alter his domicile of origin, which continues until changed by lawful authority. The plaintiffs in error are in the position of one who has kidnaped a child and, therefore, have no rights in the premises. Notwithstanding that the authority of the petitioner as guardian was local, it does not follow that she has no rights in a foreign state over her ward wrongfully removed from her domicile. The doctrine of comity between states allows a foreign guardian to recover her ward in such cases. (Woodworth v. Spring, 4 Allen, 384; Church on Hab. Corp., Sec. 457; Taylor v. Jeter, 33 Ga., 195; Warren v. Hoefer, 13 Ind., 167; Townsend v. Kendall, 4 Minn., 412; People v. Allen, 105 N. Y., 628.) Demand was unnecessary, and would have been absurd where the child was wrongfully as well as forcibly

taken from the custody of the petitioner. Even if the judgment of the District Court is reviewable in this proceeding, the question is not what this court would have done if the matter was originally before it, but whether there was manifest abuse of discretion on the part of the trial court.

The evidence discloses that the petitioner gave up a profitable business in Pittsburg, went to St. Paul, there assumed a mother's place for the three children, as well as a housekeeper for her brother. She supported the family at times by her skill with the needle. She took a mother's part in every way. It cannot be justly urged, therefore, that she is an incompetent person to be intrusted with the care of the child in question, who owes much to her aunt's fostering care during her years of infancy. Neither wisdom nor experience justifies placing a strange child into a home already filled with children (as is the case of the home of plaintiffs in error), the time of whose parents must necessarily be taken up with their wants. Again, the affection and maintenance which an only son or daughter invariably secures from its mother would gladly be accorded by Miss Bowman. The fact that plaintiffs in error are richer than defendant in error should not be the controlling consideration. It is not conducive to the best interests of a little girl, for the purpose of getting into a richer family, to cut asunder all the affections of years of loving attention and personal sacrifice. There are some things promotive of the highest welfare of children incapable of measurement by a monetary standard.

KNIGHT, JUSTICE.

The defendant in error, Margaret Bowman, plaintiff below, under the habeas corpus act by petition alleged that Ida May Bowman, at that time, May, 1900, of the age of five years, was unlawfully restrained of her liberty by J. A. Jones and Ella Jones, plaintiffs in error here, at their residence in the town of Buffalo, in Johnson County, Wyoming, without legal justification, they having caused said Ida May Bowman

to be forcibly abducted and spirited away from said petitioner, Margaret Bowman, in the City of St. Paul, Minnesota, on or about February 15th, 1900, said petitioner being at the time the qualified and acting guardian of said Ida May Bowman, an orphan, and the child of her brother, John J. Bowman, who on his death bed gave said child into her charge, and that subsequently and within a few days thereafter said petitioner was duly appointed the guardian of said child by the Probate Court of Ramsey County, State of Minnesota. ·

In obedience to a writ of habeas corpus, the defendants there, John A. Jones and Ella Jones, his wife, brought the child, Ida May Bowman, into the District Court of Johnson County, Wyoming, where the testimony of witnesses then present and the depositions of others then absent was heard at great length, and the court found for the petitioner, Margaret Bowman, awarding to her the custody of said child, Ida May Bowman, and gave its judgment to that effect and for costs.

To that judgment plaintiffs in error, John A. Jones and Ella Jones, his wife, duly excepted and come here on error.

It seems to be necessary and proper to say to start with that it is evident throughout this case that most of the difficulties and disagreements have arisen from differences in religious opinions, and as the statutes of this state not only fail to make any distinction as to religious belief, but absolutely prohibit any distinction being made on account thereof, we cannot and will not give such evidence the slightest weight in our decision, which will be an attempt to decide what shall be best for the welfare of the child, Ida May Bowman, independent thereof, as we fully believe we are authorized to ·do by all the authorities when not otherwise directed by statute. We say this because in discussing the facts as shown it might without this statement appear that this unfortunate condition might have some consideration in our determination, especially since some reputable courts, by reason of local statutes, have considered such differences of religion.

The facts appear to be substantially as follows:  John J. Bowman prior to his death on February 5th, 1900, had sought to remove the child, Ida May Bowman, from the care, control and influence of his sister, Margaret Bowman. Evidence of this fact is beyond dispute, and, prior to his death, he charged his son, Oscar, to carry out this wish. Immediately after the funeral the petitioner, Margaret H. Bowman, informed the boy, Oscar, that if he and the other relatives insisted on interfering with her care and custody of his sister, Ida May Bowman, she would take her away where he would not see her again, and he says that, believing she would keep her word good, and remembering his promise to his father, he took counsel of a witness produced by deposition and was told that the court should order otherwise;  he had as much right to care for his little sister as had her aunt;  and on the 15th day of February he took the child to his mother's sister and related to her his promise given his father, and the child was brought to Wyoming by another sister of the mother and he and a younger brother followed; and the plaintiff in error, Ella Jones, and her husband, J. A. Jones, are presented and declared to have illegally received the child and assisted her little brother, Oscar, in carrying out the wishes of his dead father, as he had promised to do.

On the 16th of February letters of guardianship were issued to Margaret H. Bowman out of the Probate Court of Ramsey County, Minnesota; but the child had been or was being taken out of the State of Minnesota when these letters of guardianship were issued.  The father, John J. Bowman, just before his death, had requested one William F. Beck, who was his friend, to act as guardian of his three children, which included the little girl, Ida May, and the little boy, Oscar, in his distress, appealed to Mr. Beck, who, on the 14th day of February, 1900, filed his petition to be appointed the guardian of said Ida May Bowman and of her brothers, J. Oscar Bowman and Charles D. Bowman; and the brother, Oscar, testifies that, relying on this petition

and upon the advice of the attorney, as above recited, he took the child to his aunt, his mother's sister, as aforesaid. A letter from this little boy to his other aunt, the plaintiff in error here, explains her action in receiving the child, Ida May Bowman, and is in evidence:

"DEAR AUNT ELLA:—Papa died Monday morning. We buried him yesterday. Aunt Marguerite had all the money in the house and wouldn't let us telegraph you. I went to work and Chas. to school and just got home about half an hour before he died. Just before I went to work Aunt Marguerite ,went to get breakfast and I was left alone with papa. He asked me to remember what he had told me about taking care of Ida and said don't let Aunt Marguerite bring her up. You know I do not wish it and mama wouldn't like her to. I don't know what to do. I must get her away from Aunt Marguerite and am going to ask Cousin Ida to take care of her. Cousin Eugene can get me a job I think. I haven't made any plans yet, but I must have some one else appointed guardian. I may bring her out there. I wish you were here, for. I know mama would like you to have Ida. With love to all, I remain,

"Your nephew,<br>"OSCAR BOWMAN,

"P. S.—Please excuse the pencil as I was in a hurry.
"2-8-1900.                                    O. B."

Upon receipt of the above letter, as shown by the evidence, and without information of any action of any court, the plaintiff in error, Ella Jones, proceeded to the assistance of the boy, Oscar, who had already interested his cousin, Ida Saunders, to take the child, Ida May, and save her from being taken where he could never see her again. It is not necessary to recount all that was done. The boy, Oscar, bravely kept his promise made his father and if any further wrong could be done him and his young sister than that already received in this case, it would be for this court to affirm the decision rendered herein and separate them, which we find the law will not permit us to do.

Margaret H. Bowman, who seeks the custody of this child, is by her own evidence without a home and entirely dependent upon her needle for support—a maiden lady past middle age—and she admits the possibility of her return to Pennsylvania. Upon reaching Wyoming with the child here in controversy, and her brothers, Oscar and Charles, having followed, plaintiff in error, John A. Jones, the husband of Ella Jones, the child's aunt, was duly appointed guardian of the child, Ida May Bowman, by the District Court of Johnson County, Wyoming, and the evidence discloses him to be a man of means and willing and able to perform the duties thereof. The foregoing statement of facts by no means includes all, but it is sufficient to show that the interest of the child, Ida May Bowman, should be the sole consideration here. And while other questions were raised by defendant in error in the brief, it was admitted that the sole question should be that above stated. The trial court seems to have been of the opinion that the action of the Probate Court in Ramsey County, Minnesota, where Margaret Bowman was appointed guardian of the child, Ida May Bowman, precluded the making of the appointment of John A. Jones as her guardian in his court after the child had been brought into the jurisdiction of his court, and at first that question was urged here, but the authorities do not support such a contention.

A leading case in point and one which calls attention to many others is found in 71 Mich., 180, and in that case the court say, among other things: "Guardians for infants may be appointed by the last will of the parent instead of by the court, in which case the court will recognize their authority and their control of the ward so long as it is right and proper, and for the best interest of the ward. The powers of a testamentary guardian are just the same precisely as are those of a guardian appointed by the court, and are allowed to be exercised or withheld for the same reasons. Who shall or may be appointed guardian is within the discretion of the court. Relatives of the infant are

usually selected, and those nearest of kin are usually preferred when otherwise competent, and as between those entitled the question to be determined in making the selection is, and always should be, what will be for the best interest of the ward under all the circumstances? It should control everything else." And again in the same case the court says: "Comity cannot be considered in a case like this, when the future welfare of the child is the vital question in the case. The good of the child is superior to all other considerations. It is the polar star to guide to the conclusion in all cases of infants, whether the question is raised upon a writ of habeas corpus or in a court of chancery."

The Missouri Court of Appeals, in case *In re* Delaro, 37 Missouri Appeal Reports, 185, that court says: "It has become a settled principle in the jurisprudence both of England and America that the interests of the child is the paramount consideration." In Townsend v. Kendall, 4 Minn., 412, Justice Flandrau says: "When a foreign guardian or anybody else attempts to exercise any restraint over the person of anyone within this state, the writ of habeas corpus or any other appropriate remedy will always be effectual to enquire into the propriety of such attempted restraint, and upon such enquiry the proper court can make such order or judgment, as the case may require. If the facts stated in the answer in this case had been interposed as a return to a writ of habeas corpus, and nothing else had been made to appear, there can be very little doubt that they would have been a good answer to a discharge under the writ. The courts of this state have full powers to investigate the whole subject of the guardianship, and may upon a proper showing refuse the guardian the custody of his ward, or restore him to such custody." In New York the question is to how much importance should be placed upon foreign judgments where the welfare and interests of children are under consideration, and in the case of The People ex rel. Lucy Allen, Respondent, v. William H. Allen, Appellant,

105 N. Y. Court of Appeals, 628, says: "We dismiss this appeal for the reason that the courts below, upon a view of all the existing facts relating to the welfare and interests of the infants, exercised their discretion in awarding to the mother the custody of the children; and, in so doing, gave to the Illinois decree not the force of an estoppel, or the conclusive effect sometimes due to a judgment, but simply regarded it as a fact or circumstance bearing upon the discretion to be exercised without dictating or controlling it."

An interesting case and one in point here is that of James H. Woodworth v. Azubah Spring, 4 Allen, 321, and from the opinion of Chief Justice Bigelow we quote: " * * * if the right to the possession and control of the person of the child depended on his domicil, the right of the petitioner to claim the custody of his person would be indisputable. But we are unable to see that the facts that the child was born in another state, and that he has never by an act or election of his own or of his guardian obtained a new home here, have a decisive bearing on the question at issue in the present case. He is now lawfully within the territory and under the jurisdiction of this commonwealth, and has a right to claim the protection and security which our laws afford to all persons coming within its limits, irrespective of their origin or of the place where they may be legally domiciled. Every sovereignty exercises the right of determining the status or condition of persons found within its jurisdiction. The laws of a foreign state cannot be permitted to intervene to affect the personal rights or privileges even of their own citizens, while they are residing on the territory and within the jurisdiction of an independent government. Effect may be given by way of comity to such laws by the judicial tribunals of other states and countries; but, *ex proprio vigore,* they cannot have any extra-territorial force or operation. The question whether a person within the jurisdiction of a state can be removed therefrom depends, not on the laws of the place whence he came or in which he may have his legal domicil, but on his rights

and obligations as they are fixed and determined by the laws
of the state or country in which he is found." Further on
in this same opinion this court says: "An administrator
appointed under the laws of a foreign state cannot act as
such in this commonwealth. Nor, for like reasons, can a
guardian appointed by virtue of the statutes of another
state exercise any authority here over the person or prop-
erty of his ward. His rights and powers are strictly local,
and circumscribed by the jurisdiction of the government
which clothed him with the office. (Story Confl. Laws,
Sec. 499; Morrell v. Dickey, 1 Johns. Ch., 153; Kraft v.
Wickey, 4 Gill & Johns., 322; Johnstone v. Beattie, 10 Cl.
& Fin., 42, 113, 145.) So far, therefore, as the claim of
the petitioner to the custody of the child in the present case
rests on a supposed rightful authority to control his person
in this commonwealth, by virtue of his appointment as
guardian in the State of Illinois, it is not supported either
on principle or authority. He cannot assert his tutorial
power, *de jure,* in our courts or within our territory. * * *
But the decree of the Probate Court does not deprive this
court of the power to adjudicate and determine the question
of the proper custody of the child as between a domestic
guardian and one appointed in the place of the domicil of
the infant. The jurisdiction of this court to decide, on
habeas corpus or other proper process, concerning the care
and custody of infants, is paramount, and cannot be taken
away by any decree of an inferior tribunal. (Common-
wealth v. Briggs, 16 Pick., 203.) The result is that neither
of the parties to the present proceeding can assert or main-
tain an absolute right to the permanent care and custody
of the infant who is now before the court. But it is for this
court to determine, in the exercise of a sound judicial dis-
cretion, having regard to the welfare and permanent good
of the child as a predominant consideration, to whose cus-
tody he shall be committed."

While in this case it was admitted by the respective coun-
sel that the consideration that should govern the court is

that of the welfare of the child, we are unable to return this case for final determination without references to some of the rulings on that subject and to some showing that the courts have always held that where it is possible a family or those remaining should be kept together, and this latter consideration becomes 'of great importance in the case here under consideration, for the reason that the plaintiff in error, John A. Jones, has shown by undisputed evidence that during the life time of John J. Bowman, the father of the child, he assisted with money in the care of his family. That he has the means to support and educate the child and is willing to keep the family together, not only because they are the children of his wife's sister, but because it was the wish of their dead father. We will refer to only a few of the authorities in point. (Bennett v. Byrne, 2 Barb. Ch., 216; Holley v. Chamberlain, 1st Redfield, 333; Watson v. Warnock, 31 Ga., 718; Albert v. Perry, 4 N. J. Eq., 540; Commonwealth v. Addicks and Wife, 5 Binney, 520; Underhill v. Dennis, Guardian, &c., 9 Paige Chancery, 202; English v. English, 32 N. J. Eq., 738; Lusk v. Lusk, 28 Mo., 91; The Commonwealth v. Addicks and Lee, 2 Sergeant and Rawle, 174; Coffee and Wife v. Black, 82 Va., 567; Taylor v. Jeter, 33 Ga., 195; Warren v. Hofer, 13 Ind., 167; Markwell v. Pereles, 95 Wis., 406; *In re* Laura Doyle, 16 Mo. App., 159; Schlitz v. Roenetz, 86 Wis., 31; Cozine v. Horn, 1 Bradford's Reports, 143; Henry D. Rust v. Mary E. Van Vacter, 9 W. Va., 600.) But the case which would seem to more than sustain the argument of counsel for plaintiff in error, and appeal to the human feelings of any court and where the rule that the interests of the child must be found and followed, is that of *In re* Bullen, Petitioner, &c., 28 Kan., 781.

And this court, under the authorities cited and others too numerous to set out, while it may appear that we practically annul an appointment made by the court in Minnesota, not because of its illegality, but because the interests of the child under the evidence submitted, believe that we can make a

wiser arrangement and one authorized by law, and direct that this case be remanded to the District Court of Johnson County, Wyoming; that the appointment of Margaret Bowman be annulled, and that John A. Jones be appointed guardian of Ida May Bowman, subject to the further order of that court, and that the plaintiffs in error, John A. Jones and Ella Jones, have judgment for their costs herein expended.

CORN, C. J., and POTTER, J., concur.