In Re CHARLES DIXON, a Minor; CORNELIUS B. BAKER and SUSAN M. BAKER, as Guardians, Appellants.

**In Banc, February 10, 1914.**

**REMOVAL OF GUARDIAN: On Religious Grounds.** For the reasons stated in State ex rel. Baker v. Bird, 253 Mo. 569, the judgment of the circuit court, affirming a revocation of the appointment of certain persons as guardians of a minor, on the sole ground that they are raising him in a religious faith different from that of his deceased father, is reversed.

Appeal from Jackson Circuit Court.—*Hon. Daniel E Bird*, Judge.

REVERSED (*with directions*).

*E. Wright Taylor* for appellants.

(1) The complaint does not allege and the proof does not show an express statutory ground or other good cause for the removal of the guardians. R. S. 1909, secs. 50, 424, 462; King v. King, 73 Mo. App. 78; Nicholson's Appeal, 20 Pa. St. 50. (2) A person cannot be rendered ineligible to an office of trust under this State on account of his religious opinion. A religious test as a qualification for tenure of office is unconstitutional. U. S. Con. Amend., arts. 1, 14; Mo. Con., art. 2, sec. 5; Cooley, Con. Lim. (7 Ed.) C. 13, p. 659; Maxey v. Bell, 41 Ga. 183; In re Clements, 12 Mo. App. 592. (3) A guardian of the person holds an office of trust as defined by the statute and Constitution of Missouri. R. S. 1909, secs. 50, 462; State ex rel. v. Walker, 132 Mo. 210; State ex rel. v. Valle, 41 Mo. 29; State ex rel. v. Bus, 135 Mo. 332; State ex rel. v. Harter, 188 Mo. 527; State ex rel. v. Rombauer, 101 Mo. 499; State ex rel. v. May, 106 Mo. 506; 23 Am. & Eng. Ency. Law (2 Ed.), pp. 322-327; 29 Cyc. 1361-1364. (4) The personal relation created by the act of adoption between the parties thereto, is substantially that of parent and child, with all the reciprocal rights and duties incident or necessary to that relation. R. S. 1909, secs. 1671, 1673, 1675, 1678, 5425, 4492; In re Clements, 12 Mo. App. 592; In re Charles B. Clements, 78 Mo. 352; Church, New Probate Law, chap. 1, sec. 12; 1 Ross, Probate Law and Practice, sec. 126; Tiffany's Persons and Domestic Relations, sec. 112; Woerner, Am. Law of Guardianship, sec. 10, pp. 24 to 30; Rice, Am. Probate Law and Practice, pp. 551 to 554; Gary's Probate Law, secs. 871-872; Schouler, Domestic Relations (3 Ed.), sec. 232; Stimpson, Am. Statute Law, secs. 6640-51; Reinders v. Koppelmann, 68 Mo. 482; Hockaday v. Lynn, 200 Mo. 456; Ross v. Ross, 129 Mass. 243; In re Scarritt, 76 Mo. 565; Weir v. Marley, 99 Mo. 484; Reeves v. Massey, 25 Ga. 612; Tilly v. Harrison, 91 Ala. 295; Cofer v. Scroggins, 98

Ala. 342; State v. Koonse, 123 Mo. App. 635; Sarazin
v. Railroad, 153 Mo. 479; 1 Am. & Eng. Ency. Law (3
Ed.), p. 726; Whitmore, Law of Adoption, 3 Cen. L.
J. 397; 1 Cyc. 914, 930. (5) The interest of the child
is to be considered first, and that viewpoint demands
that he remain in the home of his adoptive father and
mother, Mr. and Mrs. Baker.

*Monroe & Roark* and *Hogsett & Boyle* for re-
spondents.

(1) The pleadings allege and the proof abund-
antly shows sufficient statutory grounds to justify and
demand a removal of Mr. and Mrs. Baker as guar-
dians. R. S. 1909, secs. 50, 420, 424, 462; King v. King,
73 Mo. App. 78; In re Ford, 157 Mo. App. 141; In re
Doyle, 16 Mo. App. 159; Voullaire v. Voullaire, 45 Mo.
602; In re Kellar's Minors, 5 Ir. Ch. 328; In re Mc-
Grath, 1 Ch. 143; In re Clark, 21 Ch. D. 817; In re
Nevin, 2 Ch. 299; In re Scanlon, 40 Ch. D. 200; In re
McConnon, 112 N. Y. Supp. 590; Matter of Jacquet, 82
N. Y. Supp. 986; In re Crickard, 102 N. Y. Supp. 440;
Underhill v. Dennis, 9 Paige (N. Y.) 209; In re De-
Marcelin, 24 Hun, 207; In re Anne Turner, 19 N. J.
Eq. 433; 15 Am. & Eng. Ency. Law (2 Ed.), 50, 52;
Cozine v. Horn, 1 Bradf. (N. Y.) 143; Woerner on Am.
Law of Guardianship, sec. 36, 114; In re Nicholson's
Appeal, 20 Pa. St. 50; Park's Estate, 7 Pa. Dist. 700;
McCann's Appeal, 49 Pa. St. 304. (2) Appellants'
constitutional rights are not violated by their removal;
and the section of the statute in question, Sec. 420, R.
S. 1909, is not in conflict with the Constitution either
of this State or the United States, but is in further-
ance of religious freedom. Cases cited under point
one; U. S. Con. Amend., arts. 1, 14; Mo. Con., art. 2,
sec. 5; 8 Cyc. 884; Spies v. Illinois, 123 U. S. 131;
Lloyd v. Dollison, 194 U. S. 445. (3) The welfare of
the minor will be best subserved by following the judg-
ment of the probate court and placing this child in the

custody of George Dixon. The probate court exercises a wide discretion in such matters and unless it is manifest that such discretion has been abused, it will not be interfered with on appeal. See cases under point 1; King v. King, 73 Mo. App. 78; Jones v. Jones, 34 N. C. 98; 21 Cyc. 43, 60; In re Ford, 157 Mo. App. 141.

BROWN, J.—This is an appeal from the judgment of the circuit court of Jackson county affirming an order of the probate court of said county revoking the appointment of appellants as guardians of the person of one Charles Dixon, Jr., a minor.

Charles Dixon, Sr., the father of the subject of this litigation, and two of his three children were drowned somewhere in the northern states during the summer of 1911. Dixon, Sr., was a prominent business man of Kansas City, and a member of the Roman Catholic church, while his late wife, a daughter of ex-Governor Morrill of Kansas, was in her lifetime a Unitarian.

It may be inferred from the evidence that there was an antenuptial agreement entered into at the time of the marriage of Mr. and Mrs. Charles Dixon, whereby they mutually agreed that their children should be instructed in the Roman Catholic faith.

During the lifetime of Mrs. Charles Dixon the antenuptial agreement was, in a large measure, abandoned. Dixon's children were sent to a public school and allowed to attend the Unitarian Sunday school. After the death of his wife, and during a period of about one year, Charles Dixon caused his children to attend a Catholic Sunday school and Catholic church. At the time of the trial, the minor, Charles Dixon, Jr., was attending a nonsectarian day school.

On the part of the Dixon family the evidence indicates that the present guardians are unwilling to allow the ward to attend a Catholic school or a Catholic church, and are trying to estrange him from his pa-

ternal relatives. This is denied by the guardians who testify that their ward does not wish to visit the Dixons or go to the Catholic church, and that the Dixons have been trying to prejudice their ward against his guardians; that the boy is afraid to visit the Dixons lest they take him away from the Bakers, with whom he desires to remain.

The court refused to receive the evidence of the ward, although the plaintiffs offered him as a witness. John T. Dixon and George Dixon, uncles of the ward, were present in the probate court and nodded their assent when asked by the probate judge if they had any objection to the appointment of the Bakers as guardians of Charles Dixon, Jr. The evidence quite fully established the fact that the Bakers (appellants) have a good home; have only two children—two grown-up daughters—who are amiable, respected and cultered. That the ward's home surroundings are everything that could be desired is admitted by all members of the Dixon family who gave evidence. Their only complaint is that the Bakers are not Roman Catholics, and are not rearing him in that faith, nor permitting him to visit his paternal relatives.

The evidence further shows that George Dixon, whom the probate court attempted to appoint as guardian when the Bakers were removed from that position, is a moral, sober and high-class citizen. He owns a good home and has a highly respected family, composed of a wife and two children.

The ward is peculiarly fortunate in that all his relatives, both paternal and maternal, are excellent people, and capable of rearing a minor in such manner as to give him the best of opportunities for his own advancement. The present guardians are worthy of the trust reposed in them, and the probate court can only remove them for some one or more of the causes designated in the statutes.

At the trial of this case in the circuit court the minor, Charles Dixon, Jr., was nearly thirteen years of age, so that within a few short months he will have the right to terminate this disputed guardianship in the manner which the laws of the State have provided. It will not be a long period until he can exercise the right guaranteed by the Constitution to select his own religion.

It is needless to give a more detailed statement of the pleadings and evidence here. They will be found in the case of State ex rel. Baker v. Bird, 253 Mo. 569, tried with this case, and determined at this term. The legal conclusions reached in that case necessarily work a reversal of the judgment in this cause.

The judgment of the circuit court will be reversed with directions to enter a new judgment on the pleadings, reversing the order of the probate court, wherein Cornelius B. Baker and Susan M. Baker were removed as guardians of Charles Dixon, Jr., and George A. Dixon appointed in their stead, which said judgment of the circuit court, when so entered, shall be certified to the probate court of Jackson county, as required by law.

It is so ordered. *Lamm, C. J., Woodson, Walker* and *Faris, JJ.*, concur; *Graves, J.*, concurs in the result; *Bond J.*, dissents.