[Crim. No. 3712. Second Dist., Div. Three. June 29, 1943.]

In re Miguel De Leon on Behalf of TILLIE DE LEON, on Habeas Corpus.

Bruno Newman & A. L. Oster for Petitioner.

Marcus L. Roberts for Respondent.

BISHOP, J. pro tem.—By this proceeding, initiated by a petition for a writ of habeas corpus, the father of Tillie De Leon, a ten year old girl of Mexican parentage, born in California, seeks a coercive order of this court taking Tillie from her maternal grandmother and giving her into the custody of the petitioner. We have 'concluded that the order sought should not be made.

Tillie first became the subject of court action in 1939 when her maternal grandmother was made guardian of her person. By a judgment entered on the eleventh day of March of this year, the 1939 letters of guardianship were revoked, upon the petition of Tillie's father. The judgment of revocation also provided that "the care, custody· and control of said minor, Tillie De Leon is hereby awarded to Miguel De Leon,

the father of said minor.'' An appeal was taken from this judgment by the grandmother, May 8. Before this, however, on April 20, 1943, she had filed a new petition that she be appointed Tillie's guardian. Two days later, April 22, a petition for a writ of habeas corpus was filed by Tillie's father with the clerk of the Supreme Court, and a writ was issued, returnable before this court.

Desirous of ascertaining certain facts deemed pertinent to the problems involved in the proceeding thus placed before us, we appointed the judge of the superior court who was about to conduct a hearing in order to determine whether or not to issue letters of guardianship to Tillie's grandmother, as a referee, so that the evidence which he was to take should serve both his purposes and ours. As a result of the hearing the superior court entered its judgment that Tillie's grandmother be appointed guardian of her person, and letters of guardianship were issued on the third day of June. The findings of fact, filed in the guardianship proceeding, are made the findings of the referee and as such forwarded to us, together with a transcript of the evidence taken at the hearing. We had these before us when this matter came on for hearing, June 11, and although opportunity was given no objection was made that the evidence was not sufficient to support the findings.

Looking to the findings, then, we discover that Tillie was born in April, 1933, in the home of her grandmother and that home is the only one she has ever known. (Her mother is dead.) Tillie's father has never contributed anything in excess of $50 toward her support, nor has he at any time (since she was six or sexen months old) visited or communicated with her during her lifetime, and he is not a fit or proper person to have her custody. From her grandmother, however, Tillie has received ''excellent care, treatment, secular and religious training.'' It also was found that Tillie ''is of sufficient age and mentality to form an intelligent preference between her father and [her grandmother]'' and that during the last two months Tillie's physical and mental health has changed; ''that she is now mentally and physically sick, and that such illness is due to fear, worry, and a dread that she might be separated from her grandmother.''

Petitioner objected to our receiving the referee's report and the transcript of evidence, not because of any irregularity in their procurement, but on the broad basis that the

matters there gone into were not problems for us to weigh and determine, because they were not within the issues. Petitioner's objection had a better foundation than he suspects. The grandmother, to whom the writ was directed, made a return in which she alleged, among other things, that she had continuously provided Tillie with a comfortable home, food, clothing, education and religious training for over nine years and that the petitioner had neither seen nor attempted to contact his daughter since she was six months old, nor had he provided her with the necessities of life nor with any gifts, attention or affection. In an amended return she added to these averments that Tillie's health had been adversely affected by the threat of separation from her; "That said child is of sufficient age and mentality to form an intelligent preference and wishes to remain with the grandmother" and "That to separate said child from her grandmother and take her away from the only home said child has ever known will seriously impair the child's physical and mental health." The only attempt to deny or controvert these allegations, as section 1484, Penal Code, contemplates may be done, was petitioner's request, acceded to by the grandmother, that his petition should be deemed a traverse to the original and the amended return. As the petition was entirely silent respecting the allegations to which we have referred, its contents consisting of affirmative allegations concerning the revocation of the original letters of guardianship and concerning prior petitions for writs of habeas corpus, the subject matters of the referee's findings appear in the main to be established by petitioner's failure to deny them as they appear in the original and amended return. (See *In re Delgado*, (1930) 107 Cal.App. 688 [290 P. 589]; *In re O'Leary*, (1932) 127 Cal.App. 183 [15 P.2d 761]; *In re Larabee*, (1933) 131 Cal. App. 261 [21 P.2d 132]; *In re Gutierrez*, (1934) 1 Cal.App. 2d 281 [36 P.2d 712].)

Should we, however, give a most liberal interpretation to the stipulation that the petition should be deemed a traverse to the returns, by construing it as providing that the allegations of the returns should be deemed denied, then the referee's findings should be received, approved and affirmed (*In re Matusow*, (1933) 129 Cal.App. 76 [18 P.2d 72]), for the matters there covered are pertinent to our inquiry on petitioner's theory of the present status of affairs. Petitioner

contends that the judgment revoking the original letters of guardianship is self-executing, with the result that, notwithstanding the appeal, the guardianship is at an end; that the father, then, as the natural guardian is entitled to Tillie's custody without reliance upon the provision, in the judgment revoking the original letters of guardianship, that awarded her custody to the father, a provision which petitioner calls surplusage and concedes was improperly included in that judgment, for the father was not seeking to be appointed as Tillie's guardian. A further element in petitioner's position is that because of the pendency of the appeal, the superior court had no jurisdiction to entertain the second petition by Tillie's grandmother for letters of guardianship, so that the judgment that letters should issue is void on its face.

We are not passing upon the validity of petitioner's theory, but, for the moment, are accepting it. Under his theory, as affairs now stand, it is as though no guardian had been appointed for Tillie and petitioner, solely by virtue of the fact that he is her father, seeks an order of this court that she be taken from the only home which she has ever known, her home with her grandmother. Contrary to the holding in the case upon which petitioner relies, *In re Hart*, (1913) 21 Cal. App. 30, 32 [130 P. 704], that "In this proceeding this court is not called upon, nor, in our opinion, has it jurisdiction or authority to hear evidence with reference to the best interests of the child" it has been held that under such circumstances as those petitioner sees existing here, the child's best interest is involved, and governs the discretion vested in us respecting the making of the order petitioner seeks. The Hart case was, in effect though not expressly, disowned by the court which gave it birth, in *In re McDaniel*, (1928) 90 Cal. App. 307, 309 [265 P. 884]. The distinction between the situation where a parent has, by an appropriate proceeding in the superior court, been appointed guardian of a child and that where a petitioner relies upon the mere status of parenthood for an order that the child be surrendered, is pointed out in the case of *In re Britt*, (1917) 176 Cal. 177, 181, 182 [167 P. 863]. In the Britt case, as in two cases upon which it relied, *In re Gates*, (1892) 95 Cal. 461 [30 P. 596], and *In re Bell*, (1915) 28 Cal.App. 547, 549 [153 P. 240], the facts that the petitioner had shown himself unfit as a parent by a marked lack of interest in or affection for his young child, over a period of years, and that the child had grown up with

the tendrils of her infant affections firmly attached to the one in whose custody she was, were held good reasons for the denial of an order tearing the child from her only known home. The facts in the three cases last referred to are paralleled in the case before us. Petitioner has not been appointed guardian of Tillie. Since her birth he has shown scant interest in and no affection for her, none at all during the past nine and a half of her ten years of life. Her home has been with her grandmother whom she loves, naturally and deservedly. Inevitably her preference is to remain with her grandmother rather than to take up life with a stranger. Borrowing the words of Mr. Chief Justice Beatty, appearing in *In re Gates, supra,* 95 Cal. 461, 462, we "do not feel called upon to make any coercive order by which the mere legal right of the petitioner may be enforced against the child's manifest inclination and reasonable choice to remain where she is."

We have considered this matter up to this point as though there were no superior court adjudication determining who should be Tillie's guardian. It is the fact, however, that even though the original guardianship letters have been revoked, an appeal is pending from the judgment of revocation whose outcome we do not wish to anticipate, and letters of guardianship have been issued to Tillie's grandmother by a judgment which is not void on its face. The tribunal vested by law with the duty of determining who shall be Tillie's guardian, is the superior court. (Prob. Code, sec. 1440.) While no action thus far taken has become final, such action as has been taken does not compel us to disturb the status in quo, and we are convinced that Tillie should be allowed, by us, to remain where she wishes to be, that is, with her grandmother. *(In re Green,* (1924) 67 Cal. App. 504, 505, 506 [226 P. 76].)

Fundamentally, petitioner's position is that he is Tillie's father and as such has the right to her custody, no matter what her wishes or best interests may be. Support is found for his position in such cases as *Guardianship of Salter,* (1904) 142 Cal. 412 [76 P. 51], where a conscious disregard of the child's welfare was justified upon the ground that section 1751, Code of Civil Procedure, required it. This section has been supplanted by the sections of the Probate Code having to do with the appointment of guardians for minors. Section 1406, of the Probate Code, opens with this sentence:

"In appointing a general guardian of a minor, the court is to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare; and if the child is of sufficient age to form an intelligent preference, the court may consider that preference in determining the question." The philosophy of this sentence is not new, having been given expression, before the adoption of the Probate Code, in section 246, Civil Code, but it was not known in such cases as that last cited, and there were a number of them decided before the adoption of the Probate Code in 1931. These cases do not give us the law for today; section 1406, Probate Code, does that.

The objections to the introduction of evidence are overruled. The prayer of the petitioner is denied and the writ is discharged.

Shinn, Acting P. J., and Wood (Parker), J., concurred.