[Civ. No. 5338.   Fourth Dist.   May 21, 1956.]

Guardianship of the Person and Estate of MARIA CULVER MINNICAR, a Minor. JESSIE VIOLA BANKS, Respondent, v. JOSEPHINE MARY CULVER, Appellant.

John B. Young and Richard E. Hitchcock for Appellant.

Osborn & Hosking for Respondent.

CONLEY, J. pro tem.*—Maria Culver Minnicar, whose guardianship is under question on this appeal, was born

*Assigned by Chairman of Judicial Council.

October 1, 1951, in Bakersfield. Her mother, Josephine Mary Culver, then under commitment to the women's prison at Tehachapi after a forgery conviction in San Francisco, was not married to the father. The baby when only a month old was placed by the Kern County Welfare Department in the home of the petitioner and respondent, Jessie Viola Banks, and her husband, as licensed foster parents, and they have since regularly received pay therefor; however, the respondent testified that she has not cashed the county warrants since her application for appointment was filed, and that she does not expect or desire any pay hereafter.

The child's mother, appellant herein, after continuing to serve her term at Tehachapi and at Corona was paroled in November of 1953 and has since resided in Los Angeles. On September 11, 1954, she signed an agreement with the Children's Home Society of California, purporting to give custody of the minor to that institution with a view to adoptive placement, and gave a written authorization to the society to remove the child from the home of petitioner to a supervised boarding home of the society.

Mrs. Banks thereupon filed her original petition to be appointed guardian of the person and estate of the minor; the petition was granted, but because personal service had not been secured upon the mother, an attack was made by her on that ground upon the initial appointment; at the time of the hearing on the amended petition, the court revoked the original letters of guardianship; an appeal from the order of revocation was filed by Mrs. Banks but thereafter she requested a dismissal and this court has so ordered. (Rule 19(b), Rules on Appeal.)

The amended petition for guardianship, filed on March 1, 1955, and the answer thereto of Josephine Mary Culver were the pleadings upon which the present hearing was based. The findings of fact establish the truth of the allegations of the amended petition; they determine that Jessie Viola Banks has been caring for Maria Culver Minnicar since November 1, 1951, that the minor "needs the care and attention of some fit and proper person"; that the mother of the child is not a fit and proper person to have her custody and that the contestant has abandoned said minor; "(t)hat there is need for an appointment of a guardian for said minor"; that the petitioner is a fit and proper person to act as such guardian and that ". . . it is not to the best interests of the said

minor that the contestant be permitted to place said minor with the Children's Home Society of California.''

The order appointing guardian decrees: ''That said Jessie Viola Banks be and she is hereby appointed guardian of the person and estate of said minor Maria Culver Minnicar and that Letters of Guardianship of the person and estate of said minor be issued to her upon giving bond (none required) and upon her taking and subscribing an oath, according to law.''

The respondent took the oath prescribed by law and letters of guardianship of the person and estate of the child were accordingly issued to her on June 29, 1955; the mother of the child appealed.

Three main lines of attack are made by appellant; first, it is argued that the guardianship is not shown by the record to be either necessary or convenient; secondly, it is urged there is insufficient evidence to justify the finding that the mother of the child is not a fit and proper person to have her custody; and thirdly, the argument is made that the mother should not be delayed in the exercise of her alleged right to initiate the selection of adoptive parents for the child through the Children's Home Society.

█ The superior court of the county where a minor resides or is temporarily domiciled is charged with the duty of determining whether ''it appears necessary or convenient'' to appoint a guardian of the ''person and estate, or person or estate'' of a minor ''upon the petition of a relative or other person on behalf of the minor'' (Prob. Code, § 1440; *In re De Leon,* 59 Cal.App.2d 510, 515 [139 P.2d 109].)

█ The guardianship herein, as granted, was of the person and estate; there is no evidence that the minor has any estate or any prospect of acquiring one; in fact the county of Kern has been making a regular monthly payment for her subsistence and there is no basis for a legitimate contention that it is either necessary or convenient to appoint petitioner or any other person as guardian of a nonexistent estate of the minor. If the child had had any property it would have been essential that a bond be required in connection with the appointment of the guardian of the estate (Prob. Code, § 1480; *Brainard* v. *Brainard,* 17 Cal.App.2d 520 [62 P.2d 403] ; *In re Chin Mee Ho,* 140 Cal. 263 [73 P. 1002] ; *Murphy* v. *Superior Court of Santa Clara County,* 84 Cal. 592 [24 P. 310]) and the court specifically stated that no bond was required. The appointment of a guardian of the estate

being thus neither convenient, nor necessary, the judgment is to that extent erroneous.

But other considerations leading to an opposite conclusion apply to the guardianship of the person. A baby girl, born to a mother serving a prison term for a felony, is turned over at birth to a county welfare department; she is placed by the department with foster parents; the mother, afterwards paroled, does not desire to assume the personal custody of the child, and she states that she is not in a position to care for her. Certainly, on the face of things, it cannot be said that it is neither necessary nor convenient that a fit and proper guardian of the little girl be named. The record establishes without contradiction that the petitioner is well able to care properly for the child, that she and her husband have been model foster parents and that the petitioner loves the baby as if she were her own child. Mrs. Banks has successfully raised children of her own, and the trial court had ample evidence before it to warrant the conclusion that she would be equally successful in her offer to do everything necessary and helpful in caring for and educating her ward.

The underlying realities of the situation are not those so often present in contests between a parent and a stranger. In such circumstances, if the parent is not an unfit person, he will prevail even though the stranger could do more financially for the welfare of the child than the parent. (*Roche* v. *Roche,* 25 Cal.2d 141 [152 P.2d 999] ; *Shea* v. *Shea,* 100 Cal.App.2d 60 [223 P.2d 32] ; *In re White,* 54 Cal.App. 2d 637, 640 [129 P.2d 706] ; *Stever* v. *Stever,* 6 Cal.2d 166 [56 P.2d 1229] ; *Newby* v. *Newby,* 55 Cal.App. 114 [202 P. 891] ; *Eddlemon* v. *Eddlemon,* 27 Cal.App.2d 343 [80 P.2d 1009] ; *Guardianship of De Ruff,* 38 Cal.App.2d 529 [101 P.2d 521] ; *Robertson* v. *Robertson,* 72 Cal.App.2d 129 [164 P.2d 52].)

As the mother does not desire the custody of her baby, the real contest here is between two strangers to the blood, one a woman who has given all the loving care to the child that a natural mother normally furnishes, the other a charitable corporation which is willing to undertake the care of the minor until adoptive parents can be found. And it should be noted further that there is no actual petition for adoption pending here, so that there is no occasion as there was in *Adoption of McDonnell,* 77 Cal.App.2d 805 [176 P.2d 778], to consider the relative advantages of guardianship and adoption.

■ In the circumstances, it would seem that the statutory injunction of section 1406 of the Probate Code should apply: "In appointing a general guardian of a minor, the court is to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare . . ." (*Guardianship of Aviles,* 133 Cal.App.2d 277, 281 [284 P.2d 176]; *Guardianship of Kiles,* 89 Cal.App.2d 445, 448 [200 P.2d 886]; *Guardianship of Levy,* 137 Cal. App.2d 237, 247 [290 P.2d 320]; *Guardianship of Walsh,* 100 Cal.App.2d 194, 196 [223 P.2d 322, 22 A.L.R.2d 689].)

■ And, as the selection of a guardian "is within the sound discretion of the trial court and will not be interfered with in the absence of a showing of abuse" (*Guardianship of Walsh, supra,* 100 Cal.App.2d 194, 196), the order for the issuance of letters of guardianship of the person of the minor should be affirmed, unless other considerations urged by appellant prevent the granting of letters as a matter of law.

■ It would not have been necessary in the particular circumstances of this case for the trial court to pass on the question of whether the mother is an unfit person to have the custody of the child, in view of the fact that this is in underlying essentials a contest between strangers. But the trial court did make such a finding and we cannot say that it is not supported by substantial evidence. Appellant is right in saying that the time at which fitness must be judged is the present and not the past (*In re Green,* 192 Cal. 714, 719 [221 P. 903]; *In re Bensfield,* 102 Cal.App. 445, 449 [283 P. 112]; *Guardianship of Snowball,* 156 Cal. 240 [104 P. 444]; *Guardianship of Case,* 57 Cal.App.2d 844, 847 [135 P.2d 681]; *Guardianship of McCoy,* 46 Cal.App.2d 494, 497 [116 P.2d 103]); that the mere fact that a parent has been convicted of a crime and has served a prison term is not an automatic bar to the award of custody (*Guardianship of Case, supra,* 57 Cal.App.2d 844, 848-849); and that the opinion testimony of the mother's parole officer and of the prison chaplain are much in her favor. We further believe that the finding of abandonment is not justified by the record.

■ But on the record there is still ground for a reasonable difference of opinion as to the mother's fitness, and the trial court's finding that she is presently unfit is supported by substantial evidence. Even the most ardent social worker would hardly contend that conviction of a felony is a good character reference; when proof of such a fact is made it would seem reasonable that the person convicted of such an

antisocial act should at least have the burden of going forward with evidence to prove a change of heart and a present clear aptitude for the important duty of caring for and raising the child. When this consideration is coupled with the testimony that the mother has always appeared rather cold toward her baby, that she has not sought permission from her parole officer to visit the child even though Mrs. Banks offered to pay her traveling expenses, and that she is willing to surrender her parental rights to the Children's Home Society contrary to one of the strongest instincts in nature, we cannot say that the trial court's finding is not supported by sufficient evidence.

Lastly, appellant argues that she has a natural and over-riding right to name adoptive parents who are of an age and racial derivation, and who have a religious affiliation, approved by her, and that she should not be delayed in the exercise of this alleged right through the appointment of a guardian.

The appellant, in her early thirties, of Italian racial heritage, and a Catholic, desires that the baby be adopted by people of the same or similar age, blood and faith. Mrs. Banks is in her early forties, has no Italian blood in her veins and is a Protestant; she testified that if required by the court as a condition to the guardianship, she would raise the child as a Catholic, pursuant to the baby's baptism as such; the trial court did not, however, impose any condition relative to religious training.

The comments of the court in the opinion in *Guardian-ship of Walsh*, 100 Cal.App.2d 194, 198 [223 P.2d 322, 22 A.L.R.2d 689], there restricted to the religious question, apply in principle to all of these matters:

"The court should, of course, consider the religious affilia-tions of a prospective guardian, the religious views of the parents of the minor, and their wishes as to his religious training and environment. But there is no religious qualifi-cation for the office of guardian. (*State* v. *Bird*, 253 Mo. 569 [162 S.W. 119, 123, Ann.Cas. 1915C 353]; *In re Dixon*, 254 Mo. 663 [163 S.W. 827]; *In re Waite*, 190 Iowa 182 [180 N.W. 159, 161]; *In re Butcher's Estate*, 266 Pa. 479 [109 A. 683]; *Desribes* v. *Wilmer*, 69 Ala. 25 [44 Am.Rep. 501]; *Jones* v. *Bowman*, 13 Wyo. 79 [77 P. 439, 440, 67 L.R.A. 860]; see also *Purinton* v. *Jamrock*, 195 Mass. 187 [80 N.E. 802, 805, 18 L.R.A.N.S. 926].) In *In re Butcher's Estate*,

*supra,* 266 Pa. 479 [109 A. 683], it was held that although a statute expressly provided that 'Persons of the same religious persuasion as the parents of the minors shall, in all cases, be preferred by the court' in appointing a guardian, the welfare of the minor still remained the paramount consideration. The court said (109 A. 685): 'The welfare of the child must remain the primary consideration to which all other questions must yield. Its interest is paramount, and the court must consider not only the spiritual and temporal welfare, but the minors' further training, education, morals, and the ability of the proposed guardian to best take care of the child in each and all these respects.' (See *Guardianship of Bynum,* 72 Cal.App.2d 120, 122 [164 P.2d 25].)''

It is scarcely necessary to point out that the existence of a guardianship does not foreclose the possibility of a future adoption. (*In re Santos,* 185 Cal. 127 [195 P. 1055].)

Upon the going down of the remittitur, the trial court is instructed to amend the findings as indicated in this opinion, to amend the order appointing guardian to restrict the guardianship to a guardianship of the person of the minor and to issue amended letters of guardianship accordingly; as so amended, the judgment is affirmed as to the appointment of petitioner as guardian of the person of Maria Culver Minnicar; the judgment is reversed as to her appointment as guardian of the estate of said minor. Each party shall bear her own costs on this appeal.

Barnard, P. J., and Mussell, J., concurred.