[Civ. No. 15112.   Second Dist., Div. Two.   Dec. 7, 1945.]

Guardianship of the Person and Estate of GEORGE BYNUM et al., Minors.   MINNIE McVALE, Petitioner and Appellant, v. MARCUS BYNUM, Contestant and Appellant; ELMO FIELD, Respondent.

Paul R. Matthews for Petitioner and Appellant.

Elmo L. Morris and Henry W. Wyatt for Contestant and Appellant and for Respondent.

MOORE, P. J.—Minnie McVale is the maternal grandmother of George and Angie Bynum, five and three years of

age respectively. From an order denying her petition to be appointed as their guardian she appeals on the ground that the court below abused its discretion by such denial and in appointing a stranger to the blood of the two infants. Contestant Marcus Bynum, father of the twain, also appeals from that part of the order denying his petition for letters of guardianship. The mother of the bairns was Rosie Bynum who deceased August 27, 1944. She was survived by contestant, her two sisters, Rose Couch and Rebecca Avolos, her father, and petitioner. The latter and contestant by their respective pleadings mutually accused each other of being unfit to have the custody.

After a prolonged trial in which many witnesses testified the court found the father unfit in that he drinks excessively, becomes frequently inebriated, swears in the presence of the children, and has committed homosexual acts upon the person of little George; also that he presently resides in restricted bachelor quarters on the premises of the dairy where he is employed, the sanitary facilities of which are inadequate.

The findings as to petitioner are that on the premises on which she resides there are several houses and that the common sanitary facilities are overcrowded and inadequate; that while Angie lived with petitioner the child was ill kept, dirty, ill clothed, underfed and underweight; that when she was delivered to the guardian appointed at the trial her arm was in a cast; the bandage and cast were filthy and unsanitary and her scalp and body had scales and sores which required many days to heal; also, Rose and Rebecca, who are at times in their mother's home, have low standards of morals, engage in conversations unfit for little children to hear and have contracted sundry purported marriages. That petitioner caused dissensions between contestant and his deceased wife likewise did not impress the court that it is for the best interests of the children to be reared by their grandmother. The court concluded that contestant is unfit to have the custody, and that while petitioner is a fit and proper person to be guardian of the children yet the conditions in which she lives render it contrary to the best interests of the minors for her to be appointed.

In selecting a general guardian the court must be guided by what appears to be best for the temporal, mental and moral welfare of the infant. (Prob. Code, § 1406.) A

parent is entitled to be first in the order of those available to serve (*Guardianship of De Ruff*, 38 Cal.App.2d 529 [101 P.2d 521] ; *Stever* v. *Stever*, 6 Cal.2d 166, 169 [56 P.2d 1229] ), but if a parent is unfit or lives in an environment that is not conducive to child welfare then in designating a guardian the court must be guided by what is for the best interests of the child. (Prob. Code, § 1406; *Dellow's Estate*, 1 Cal.App. 529, 531 [82 P. 558] ; *Allen's Estate*, 162 Cal. 625, 629 [124 P. 237].)

██ The record is teeming with evidence in support of the court's findings. There was testimony that contestant drinks alcoholic beverages to excess, had gonorrhea during the lifetime of his wife, had been convicted and sentenced for his failure to provide for his children and had committed acts of sex perversion upon both his son and his wife. The testimony of contestant concerning the home conditions of petitioner was substantially included in the language of the findings. Jesse Bynum gave testimony of similar import, while the guardian appointed by the court testified that when he took Angie from petitioner her head and body were covered with sores.

The court appointed Elmo Field as guardian, who has since the trial adopted Angie. He is chief of police of Gardena; maintains a spacious, decent home on one and one-fourth acres; is 39 years of age; has no family but his wife who is a registered nurse. While they are of a different faith they are willing to rear the children in the Catholic church in which the children were baptized.

A review of the record discloses that the court below exercised an earnest zeal to determine the rights of the litigants as well as the best interests of the children.

The order is affirmed.

McComb, J., and Wilson, J., concurred.