[Civ. No. 17540. Second Dist., Div. Three. Oct. 27, 1950.]

Guardianship of the Person and Estate of MICHAEL JAMES WALSH, a Minor. BERTHA I. WALSH, Appellant, v. EDITH JAEGER, Respondent.

Joseph Scott, Earl Newmire, J. Howard Ziemann and John R. Kent for Appellant.

Reynolds, Painter & Cherniss for Respondent.

VALLÉE, J.—Appeal by Bertha I. Walsh, the paternal grandmother of Michael James Walsh, a 3-year-old minor, from an order appointing respondent, Edith Jaeger, his maternal grandmother, guardian of his person and estate.

On November 19, 1948, Major George Walsh and his wife, Betty Jaeger Walsh, disappeared while on a flight by airplane over the jungles of British Guiana. No trace of them has been discovered nor has either been heard from. They left surviving them two children, Michael, the minor whose guardianship is here involved, who lived with his parents in British Guiana, and George, aged 5, a mentally retarded child and a mild spastic, who had been placed by his parents, prior to their departure from the United States, in a special school for such children in Texas, where he still remains. Michael was returned to the United States shortly after his parents' disappearance and brought to appellant, in whose care he has remained.

Each of the parties petitioned for appointment. The petitions were consolidated for trial. At the time of the hearing, the fact of the death of the parents had not been judicially determined and a will of the minors' father had not been probated. A copy of the will, however, was introduced in evidence by appellant for the purpose of indicating the father's wishes concerning the appointment of a guardian. The will, executed before the birth of Michael, nominated appellant guardian of the person and property of his "children during their minority."

After an extended trial, the court granted respondent's petition and appointed her guardian of the person and estate of Michael. The court found that respondent is "a fit and proper person" to be appointed guardian and that it is for the best interest of Michael "in respect to his temporal and mental and moral welfare" that respondent be so appointed. In its order the court conferred upon appellant the right to have Michael's custody from 10 a. m. on each Saturday until 7 p. m. on each Sunday and the right to visit him at reasonable times.

Appellant contends the court abused its discretion in appointing respondent guardian. She asserts a preferential right to the appointment (1) under Probate Code, section 1407, because she had been named as guardian in the will of the deceased father, and (2) because she is of the same religious faith as the deceased father, who, together with his wife,

covenanted when they were married to rear their children in that faith.

In selecting and appointing a general guardian of a minor the court must be guided by what appears to be for the best interest of the minor in respect to its temporal, mental and moral welfare. (Prob. Code, § 1406.) The selection is within the sound discretion of the trial court and will not be interfered with in the absence of a showing of abuse. (*Guardianship of Kiles*, 89 Cal.App.2d 445, 488 [200 P.2d 886]; *Estate of Bynum*, 72 Cal.App.2d 120, 122 [164 P.2d 25]; *Guardianship of Sharp*, 41 Cal.App.2d 79, 84-85 [106 P.2d 244].) The wishes of a parent should be considered in appointing a guardian, but they are not necessarily controlling and do not outweigh what the court considers the best interest of the minor. (*Estate of Lewis*, 137 Cal. 682 [70 P. 926]; 13 Cal.Jur. 155, § 14; 39 C.J.S. 30, § 17b; 28 C.J. 1076, § 42c; *cf., Estate of Baker*, 153 Cal. 537, 540 [96 P. 12]; *Matter of Allen*, 162 Cal. 625, 628-629 [124 P. 237].)

The record clearly shows that both petitioners are estimable persons. Mr. and Mrs. Jaeger have been married for over 17 years. She is 50 years of age and he, 54. They have reared two daughters of Mrs. Jaeger by a former marriage. One of the girls was the minor's mother. Both girls were given religious training and college educations. The surviving daughter is married and maintains a residence apart from the Jaegers. The Jaegers maintain a large, three-bedroom home, which is occupied by them alone. It has a large rear yard and patio. One of the bedrooms will be for the sole use of Michael. Mrs. Jaeger has had two years of university education and is a member of several prominent, worthy, social organizations. The Jaegers are financially able to provide Michael with more than the necessities of life, and with a college education. They have always shown a keen and active interest in the welfare of both Michael and George, not only from the moment of their birth but continuously thereafter, and they have been especially solicitous over the unfortunate condition of George and his continued welfare. They testified they were willing to take the guardianship of Michael and, if necessary, use their own personal funds for the support and maintenance of both Michael and George.

Mr. and Mrs. Walsh are both 54 years of age and have reared four children of their own. The youngest, a 15-year-old girl, lives at home with them. The Walsh home is a small, newly painted, four-room house, containing but two bedrooms. Dur-

ing his stay with them Michael has shared a bedroom and a double bed with the 15-year-old daughter.

In determining the selection of a guardian the court may consider ''the financial situation, the physical condition, the morals, character, and conduct, and the present and past history of a prospective appointee, as well as the probability of his being able to exercise the powers and duties of guardian for the full period during which guardianship will be necessary.'' (39 C.J.S. 29, § 17.) From the evidence concerning the facilities in the homes available to the minor, the character, conduct and past history of the two parties—and particularly the interest displayed by them in the welfare of their two grandchildren—the court was warranted in concluding that Michael's best interest would be served by appointing respondent guardian.

There was evidence from which the court may well have concluded that as between the two petitioners Mrs. Jaeger was the more maternal, emotionally stable and capable of rearing a small child; that the home facilities which respondent was able to provide were more adequate than those which the Walshes were able to provide; and, as the court indicated in his comments at the close of the case, the Jaegers were in a better financial condition to care for Michael than the Walshes.

In the appointment of a guardian of a minor, other things being equal, preference is to be given ''To one who was indicated by the wishes of a deceased parent.'' (Prob. Code, § 1407.) However, where the wish of the parent conflicts with what the court regards as the best interest of the minor, the latter consideration will prevail. (39 C.J.S. 30, § 17b.) In the present case the court found on substantial evidence that other things are not equal and that the wish of the parent conflicts with what it considered the best interest of Michael.

Appellant's contention that the finding that the minor has no guardian legally appointed by will is unsupported by and contrary to the evidence, is answered in *Matter of Baker,* 153 Cal. 537, 540 [96 P. 12], where the court said: ''Furthermore, the will not only does not speak, as it is said, until the death of the testator, but is wholly inoperative before it is probated, and the appointment of a guardian by will cannot be said to have been made until the validity of the will making it has been thus established.''

■ Appellant argues that she is of the same religious faith as the father; that the respondent is not; that section 551 of the Welfare and Institutions Code requires that in placing minor children for adoption, or in the placement of a juvenile court ward for care and custody, the minor be placed in a home of a similar religious faith; that, therefore, the finding that it is for the best interest of Michael in respect to his moral welfare that respondent be appointed guardian is unsupported by any evidence. The code section having to do with the care, custody, and discipline of a ward of the juvenile court has no application here. A cursory reference to that section reveals that the provision is not mandatory, the section reading: "In all cases *where it can be properly done,* the ward of the juvenile court shall be placed in an approved family, with people of the same religious belief, and shall become a member of the family, by legal adoption or otherwise." (Italics added.)

■ The court should, of course, consider the religious affiliations of a prospective guardian, the religious views of the parents of the minor, and their wishes as to his religious training and environment. But there is no religious qualification for the office of guardian. (*State* v. *Bird,* 253 Mo. 569 [162 S.W. 119, 123, Ann.Cas. 1915C 353]; *In re Dixon,* 254 Mo. 663 [163 S.W. 827]; *In re Waite,* 190 Iowa 182 [180 N.W. 159, 161]; *In re Butcher's Estate,* 266 Pa. 479 [109 A. 683]; *Describes* v. *Wilmer,* 69 Ala. 25 [44 Am.Rep. 501]; *Jones* v. *Bowman,* 13 Wyo. 79 [77 P. 439, 440, 67 L.R.A. 860]; see, also, *Purinton* v. *Jamrock,* 195 Mass. 187 [80 N.E. 802, 805, 18 L.R.A.N.S. 926].) In *In re Butcher's Estate, supra,* 266 Pa. 479 [109 A. 683], it was held that although a statute expressly provided that "Persons of the same religious persuasion as the parents of the minors shall, in all cases, be preferred by the court" in appointing a guardian, the welfare of the minor still remained the paramount consideration. The court said (109 A. 685): "The welfare of the child must remain the primary consideration to which all other questions must yield. Its interest is paramount, and the court must consider not only the spiritual and temporal welfare, but the minors' further training, education, morals, and the ability of the proposed guardian to best take care of the child in each and all these respects." (See *Guardianship of Bynum,* 72 Cal.App.2d 120, 122 [164 P.2d 25].) There is nothing in the record indicating any unwillingness on respondent's part to provide Michael with the religious training desired by his

parents and in the faith in which he was baptized. Mrs. Jaeger testified that she believed in the importance of spiritual training of a child and felt that Michael was old enough to attend Sunday School. The religious education and training given her two daughters is evidence of her sincere belief.

There is no merit in appellant's contention that the court erred in refusing to strike from the record all testimony concerning George after respondent's petition for guardianship of George was dismissed for lack of jurisdiction. Necessarily, in determining the fitness of a prospective guardian and what is for the best interest of the minor, considerable latitude must be permitted in bringing out all the facts. (*Guardianship of Sharp*, 41 Cal.App.2d 79, 84 [106 P.2d 244]; 39 C.J.S. 29, § 17.) The testimony was pertinent and relevant as indicating the character of each petitioner and as showing her attitude toward other members of the minor's family and the ability of each to cope with a burdensome problem.

We may not reject the findings of the trial court and substitute contrary findings. There is evidence that would have supported contrary findings. That the trier of fact rejected that evidence does not impeach the soundness of his conclusions. We do not have the opportunity of seeing and hearing the parties and the witnesses or of applying any of the tests by which the propriety of appointing one or the other of the parties may be determined. Appellant "has failed to establish any greater grievance here than she might in any case where the evidence would support a conclusion either way but where the trial court has decided it to weigh more heavily for the opposite party. Such a choice between two permissible views of the weight of the evidence is not error." (*Riesenberg v. Riesenberg*, 97 Cal.App.2d 714, 716 [218 P.2d 577].)

The finding that it is for the best interest of the temporal, mental and moral welfare of Michael that respondent be appointed his guardian is supported by substantial evidence. We are without power to disturb it.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

An application to produce additional evidence and a petition for a rehearing were denied November 22, 1950. Appellant's petition for a hearing by the Supreme Court was denied December 21, 1950.