[Civ. No. 4970.   Fourth Dist.   May 25, 1955.]

Guardianship of BABY AVILES, a Minor.   ARMEDA S. AVILES, Appellant, v. ARTHUR RAY HICKERSON et al., Respondents.

Frye & Yudelson for Appellant.

Burum & Young for Respondents.

MUSSELL, J.—On April 5, 1954, Armeda S. Aviles filed in the Superior Court of Kern County a petition for appointment as guardian of the minor child here involved. On April 13, 1954, Arthur Ray Hickerson and Mary Nancy Hickerson, his wife, who then had custody of said child, filed in the same court a petition in which it is alleged, among other things, that Armeda S. Aviles is unable to properly care for said child and that it is to the best interests of said child that she remain with petitioners. The prayer of said petition is that the petitioners be appointed as joint guardians of the person of said minor.

Both petitions were heard at the same time and the trial court found that petitioner Armeda S. Aviles, the paternal grandmother of said child is personally a fit person to have the custody of said minor, but that the home of said petitioner is not a fit or proper place to keep, care for or raise said minor, and said home is unlikely to become a fit or proper place to keep, care for or raise said minor in the future; that "It is to the best interests of said minor in respect to her temporal, mental and moral welfare that the care, custody and control of said minor be awarded to petitioners Arthur H. Hickerson and Mary Nancy Hickerson." Petitioner Armeda S. Aviles appeals from the order and judgment appointing the Hickersons as such guardians.

The question presented by appellant is whether the trial court abused its discretion in appointing the Hickersons, who are not related to said child, as guardians, in preference to Armeda S. Aviles, who is a relative and claims to be entitled to preference under the provisions of section 1407 of the Probate Code.

The child involved was born on February 3, 1954, in a maternity home in Bakersfield. Four days later, with the consent of the mother, Rae Rita Aviles, the baby was taken by Mr. and Mrs. Hickerson to their home and has remained in their custody. Rae Rita Aviles and her husband, Leo A. Aviles, the father of the child involved, were married in 1951. They have three children, Jay Lee, aged 2 years; John, aged 1 year; and the child involved, who has been named Cynthia by the Hickersons. Immediately prior to the time when the third child was born, Rae and her two children lived with her mother. Her husband, Leo A. Aviles, had been convicted of armed robbery and was in the custody of and confined by the Youth Authority. The arrangements under which the Hickersons took the baby from the maternity home apparently were made by the physician in attendance at the time of the birth of said child and were made with Rae's knowledge and consent. It was contemplated by the doctor and Mrs. Aviles that the Hickersons would commence proceedings for the adoption of said child.

It was stipulated at the trial that the Hickersons are fit and proper persons to have the custody of the child and evidence was introduced showing they had been married seven years; that they have no other children and can have none of their own; that Mrs. Hickerson does not work outside of the home but devotes her full time to household duties and caring for the child; that she is 25 years of age and her husband's age is 32 years; that his total earnings for 1953 were in excess of $6,000 and that he and his wife are buying their own home.

There was substantial evidence that appellant's home was not a fit or proper place to keep and raise the child; that her son, Leo, who was convicted of armed robbery, would, after his release by the Youth Authority, return to her home to live; that said son has never had a steady job; that prior to his said conviction and after reaching the age of 12 or 13 years, he had been in trouble several times; that his brother, Johnnie, who spent most of his time at the home, had at one time been arrested "in connection with marijuana"; that Ronnie, an adopted son, aged 10 years, living in the home, had

been in trouble several times for stealing; that the home was not kept clean; that profane language often was used in the presence of Ronnie and other children; that there were numerous arguments among the members of the family; that appellant "worked out" from 4 o'clock in the afternoon until midnight, five days each week; that her husband worked during the day from 7:30 a. m. to 4:30 p. m. and that unless appellant quit her job (which she promised to do) there would be no one at home to care for the child.

There was testimony contrary to the foregoing evidence relative to the condition of appellant's home, the language used therein, and the conduct of the adopted son, Ronnie. However, such testimony merely created a conflict and the trial court's finding that appellant's home is not a fit or proper place to keep, care for and raise said minor is binding on us and cannot be here disturbed.

■ Appellant argues that she is entitled to be appointed as guardian by reason of the fact she is a relative of said child. Section 1407 of the Probate Code, upon which she relies, provides:

"*Order of right to guardianship.* Of persons equally entitled in other respects to the guardianship of a minor, preference is to be given as follows:

" (1) To a parent;

" (2) To one who was indicated by the wishes of a deceased parent;

" (3) To one who already stands in a position of a trustee of a fund to be applied to the child's support;

" (4) To a relative;

" (5) If the child has already been declared to be a ward of the juvenile court, to the probation officer of said court."

This section must be read in conformity with and is limited by the previous section (1406) which provides in part:

"*Rules for appointment.* In appointing a general guardian of a minor, the court is to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare."

These sections of the code have been construed in connection with the question of the rights of parents to appointment as guardian in preference to strangers and it has been held that in guardianship proceedings the parents of a legitimate child have preference over a nonparent and the custody shall not be given to a nonparent unless the parent is found unfit. (*Guardianship of Smith,* 42 Cal.2d 91, 92 [265 P.2d 888, 37

A.L.R.2d 867]; *Stewart* v. *Stewart*, 41 Cal.2d 447, 452 [260 P.2d 44]; *Roche* v. *Roche*, 25 Cal.2d 141, 144 [152 P.2d 999].) However, our attention has not been directed to any decisions holding that unfitness of a relative must be found before a stranger may be appointed as guardian. As was said in *Robertson* v. *Robertson*, 72 Cal.App.2d 129, 135 [164 P.2d 52] :

"The chief concern of the courts is the welfare of the child, which is the paramount consideration by which they are to be guided in awarding the custody of the child."

In *Guardianship of Smith, supra,* in his concurring opinion, Mr. Justice Traynor states that the heart of the problem is how the best interests of the child are to be served and that "The court's statutory duty to be 'guided by what appears to be for the best interests of the child in respect to its temporal and mental and moral welfare' (Prob. Code, § 1406) encompasses the view that the child's welfare is part of the responsibility of a fit parent."

And as was said in *Guardianship of Boulad,* 90 Cal. App.2d 135, 138 [202 P.2d 562] : "The paramount consideration in determining the custody of a child is the welfare of the child." In 13 California Jurisprudence 155, section 14, it is said that where neither parent is claiming the right, however, the preference to which any other applicant for appointment may be entitled must yield to the paramount consideration—the interest and welfare of the child.

In the instant case the parents of the child are not seeking appointment. The father, Leo A. Aviles, has consented to the petition of Armeda S. Aviles, and the mother, Rae Aviles, has consented to the appointment of the Hickersons. However, as was held in *Guardianship of Walsh,* 100 Cal.App. 2d 194, 196 [223 P.2d 322, 22 A.L.R.2d 689] : "The wishes of a parent should be considered in appointing a guardian, but they are not necessarily controlling and do not outweigh what the court considers the best interest of the minor." (Citations.)

There was substantial evidence herein from which the trial court may well have concluded as between the petitions, that the home facilities which the Hickersons were able to provide and the personal care and attention which they were able to give the child were more suitable to the welfare of the child than the home of the appellant, and that the Hickersons were the more able to properly care for the child. The finding of the trial court that it is to the best interests of said minor in respect to her temporal, mental and moral welfare that the

care, custody and control of said minor be awarded to the Hickersons is supported by substantial evidence.

In *In re Coughlin,* 101 Cal.App.2d 727, 731 [226 P.2d 46], this court held:

"It is true, as pointed out by counsel for appellant, that the Legislature has prescribed certain guides under which the courts should act in awarding custody of minor children. (Civ. Code, § 138; Prob. Code, §§ 1406-1408.) In this connection counsel cites several cases in support of his argument, such as *In re Green,* 192 Cal. 714 [221 P. 903]; *Washburn* v. *Washburn,* 49 Cal.App.2d 581 [122 P. 2d 96]; and *Juri* v. *Juri,* 69 Cal.App.2d 773 [160 P.2d 73]. The true rule in this respect is set forth in *Crater* v. *Crater,* 135 Cal. 633, 635 [67 P. 1049]. It is there stated that the controlling force in directing the custody of minor children includes the conduct of the parties, the morals of the parents, their financial condition, the age of the children, and the devotion of either parent to the children's best interests and good, and that the court's legal discretion in exercising such power, and the conclusion reached by it, will not be disturbed upon appeal unless it clearly appears that its discretion has been abused."

No abuse of discretion here appears.

Appellant argues that the transaction through which the Hickersons came into possession of the child was illegal. However, the issue here is whether the court abused its discretion in appointing the Hickersons as guardians and the manner and means by which the child was delivered to them is not determinative of that issue.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.