38 Cal.App.4th 1763 (1995)
45 Cal. Rptr.2d 760
In re VANESSA P., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent,
v.
ADA IRIS JACKSON et al., Defendants and Appellants;
PATRICE JOHNSTON et al., Defendants and Respondents.
Docket No. G016898.
Court of Appeals of California, Fourth District, Division Three.
October 13, 1995.
*1765 COUNSEL
Van Deusen, Youmans & Walmsley, Ted R. Youmans and John L. Dodd for Defendants and Appellants.
*1766 Terry C. Andrus, County Counsel, and Gene Axelrod, Deputy County Counsel, for Plaintiff and Respondent.
Paoli & Paoli and Sylvia L. Paoli for Defendants and Respondents.
Harold LaFlamme and William R. Roush, under appointments by the Court of Appeal, for Minor.
OPINION
RYLAARSDAM, J.
This is a dispute between aunts over the custody of an orphaned child. After the juvenile court declared the minor a dependent, it awarded temporary custody of the child to the paternal aunt and her husband. Despite mother's nomination of the maternal aunt as the minor's guardian, maternal aunt was only allowed "relative standing" in the juvenile court proceedings. The maternal aunt appealed, claiming various procedural and substantive irregularities.
Respondents argue maternal aunt has no standing to appeal and invite this court to dismiss the appeal. We find maternal aunt should have been granted de facto parent status, has the right to participate fully in the juvenile court proceedings and to appeal. We also order the juvenile court to vacate its prior orders, terminate jurisdiction, and allow the parties to proceed in superior court.

STATEMENT OF FACTS
On July 17, 1994, Vanessa P., a two-week-old baby girl was orphaned when her mother committed suicide; her father had died three months earlier. In her will, mother had nominated her sister Ada Iris Jackson as the guardian of the minor's person and estate. Jackson had stayed with her sister and the newborn baby, following Vanessa's birth. Jackson told the social worker immediately upon her sister's death, she was so overwhelmed by grief and her responsibilities she was unable to assume the immediate care of Vanessa. Vanessa then was taken into protective custody by the San Jose Police Department.
*1767 On July 20, in Santa Clara County, a hearing was held pursuant to Welfare and Institutions Code section 300[1] to determine if Vanessa should be adjudged a dependent of the court. Both Jackson and Vanessa's paternal aunt and uncle, Patrice and Lewis Johnston, attended. The court found Vanessa should be detained and ordered the Santa Clara County Department of Family and Children's Services (DFCS) to investigate whether Vanessa should temporarily be placed with Jackson and her husband or with the Johnstons. The court gave DFCS discretion to place Vanessa with the couple it believed could best take care of Vanessa on a temporary basis and scheduled another hearing.
DFCS assigned temporary custody of Vanessa to the Johnstons, in part because Jackson was still too distraught to care for Vanessa. On August 12, the court found Vanessa to be a dependent of the court, pursuant to section 300, subdivision (g), and transferred jurisdiction to Orange County, where both the Johnstons and the Jacksons lived. The court approved a weekly visitation schedule for the Jacksons. Both the Jacksons and the Johnstons were present at this hearing.
After receiving the transfer from Santa Clara County, the Orange County Juvenile Court sent the Johnstons notice of the transfer and of a hearing scheduled for September 21. At that hearing, where the court did not alter the existing custody arrangements, the Johnstons were present and represented by counsel. The court also scheduled a dispositional hearing for October 19. The Jacksons, who were not advised of the September 21 hearing, either by the Johnstons or by the court, were neither present nor represented.
On September 23, the Jacksons filed a petition in the Orange County Probate Court, seeking to be appointed Vanessa's guardians and to adopt her. The court refused to act, deferring to the juvenile court as required by section 302, subdivision (c). (See In re Marriage of Seaman & Menjou (1991) 1 Cal. App.4th 1489, 1498-1499 [2 Cal. Rptr.2d 690].)
The next juvenile court hearing took place on October 19. Again, the Jacksons were not notified of the hearing and did not appear. The Johnstons were represented but failed to advise the court of the Jacksons' interest or status as designated guardians. At the Johnstons' request, the court granted them status as de facto parents. The court found Vanessa was a minor "left *1768 without any provision for ... her support" (§ 361, subd. (b)(5)) and continued the matter to November 30, for a hearing under section 366.26. A section 366.26 hearing is held to determine if parental rights should be terminated. In scheduling this hearing, the court acknowledged, "that this is an unusual case and the sections that we are using to make these findings I understand are somewhat strained. However, I believe that they are appropriate sections. I believe that had the legislature contemplated this sort of situation this is precisely what the appropriate action would be." Only the Johnstons received notice of the new hearing date.
Upon finally learning of the court's actions, the Jacksons petitioned to terminate the jurisdiction of the court pursuant to section 388. (A motion pursuant to section 388 may be made by a parent or other person having an interest in a child to modify or set aside a prior juvenile court order or to terminate juvenile court jurisdiction.) On November 22, the court denied the motion, without holding an evidentiary hearing, on grounds the Jacksons had failed to demonstrate a change in circumstances, or any new evidence to warrant a modification of the court's prior orders. The court did grant the Jacksons "relative standing" but refused to allow the Jacksons' counsel or the Jacksons access to the juvenile court file, pursuant to section 827 which limits access to this file to the court, parties, and their attorneys.
On December 9, the court held the section 366.26 hearing previously scheduled for November 30. The court refused to permit the Jacksons' counsel to act on their behalf at the hearing, stating it was "really clear that what their level of participation is is to be present at the proceedings and to make a statement to the court as to their views." The court further stated that the fact Iris Jackson had been nominated as guardian in the will did not allow her "to be raised to the level of defacto [sic] parent." The court found adoption was in the best interest of Vanessa, ordered her placed for adoption, and set a periodic review hearing for May 30, 1995.
The Jacksons filed a notice of appeal from the section 366.26 judgment citing several errors including the court's 1) finding Vanessa continued to come within the meaning of section 300, 2) failure to support its jurisdictional determination by substantial evidence, 3) rendition of dispositional orders in excess of it's authority, 4) failure to notify the Jacksons of dispositional hearings, 5) failure to set the section 388 motion for a full hearing, 6) failure to terminate dependency jurisdiction and refer the matter to probate court, 7) failure to make the appropriate findings before setting a section 366.26 hearing, 8) improperly conducting a section 366.26 hearing, and, 9) failure to require the matter be litigated in probate court. *1769 Respondents argue the Jacksons have no standing to appeal and that the court did not commit any error.

DO THE JACKSONS HAVE STANDING TO INITIATE THE INSTANT APPEAL?
(1a) The Jacksons are neither parents nor guardians of the minor and therefore arguably have no standing in the dependency action and no right to appeal. (See §§ 311, 312.) The fact that Iris Jackson was not appointed guardian, however, appears to be merely the result of the sequence of these proceedings. By the time she filed her petition for guardianship, the juvenile court had already assumed jurisdiction and thus the probate court lacked jurisdiction. As a result, the person whom Vanessa's mother nominated to be the child's guardian has lacked standing to participate meaningfully in the juvenile court proceedings.
The nomination of Iris Jackson as guardian of Vanessa by Vanessa's mother cannot be ignored. "The wishes of a parent should be considered in appointing a guardian, ..." (Guardianship of Walsh (1950) 100 Cal. App.2d 194, 196 [223 P.2d 322, 22 A.L.R.2d 689].) (2) In amending the Probate Code, the California Law Revision Commission noted: "A companion bill to the proposed law amends the Family Law Act to require the court in choosing between nonparents competing for custody of a child to consider and give due weight to a nomination of a guardian of the minor's person made by a parent under the guardianship law. This will give some effect to the parent's wishes regardless of the nature of the custody proceedings." (14 Cal. Law Revision Com. Rep. (Nov. 1978) p. 524.) That amendment, enacted as Family Code section 3043 mandates: "In determining the person or persons to whom custody should be granted ... the court shall consider and give due weight to the nomination of a guardian of the person of the child by a parent...." (1b) The juvenile court's refusal to grant Jackson de facto parent status effectively deprived Vanessa's mother of her wishes for Vanessa's care. To fail to consider a mother's concern for her child is not in the child's best interest.
In re B.G. (1974) 11 Cal.3d 679 [114 Cal. Rptr. 444, 523 P.2d 244] discussed the standing issue in a similar context. There, the father of two minors died, leaving them in the care of their grandparents who in turn arranged for care of the children with neighbors. The minors' mother, who was in Czechoslovakia at the time, could not be reached. The dependency court determined, "the children's father was dead; their mother was in Czechoslovakia recovering from an auto accident; they had no legal guardian ... and adjudged them dependents of the court." (Id. at p. 688.) The *1770 court ordered the children be maintained in the home of the caretakers, as foster parents. (Id. at p. 685.)
After the mother sought to regain custody of the children, the question arose whether the foster parents had standing to participate in the proceedings. The court stated, "... a person who assumes the role of parent, raising the child in his own home, may in time acquire an interest in the `companionship, care, custody and management' of that child. (3) The interest of the `de facto parent' is a substantial one ... deserving of legal protection." (In re B.G., supra, 11 Cal.3d at pp. 692-693, fns. omitted.) In determining that foster parents were entitled to de facto parents standing, the court stated: "The juvenile court in a dispositional hearing must undertake `a judicious appraisal of all available evidence bearing on the child's best interests' including an evaluation of the relative merits of alternative custody awards. [Citation.] The presence of de facto parents will aid the court in that endeavor; the views of such persons who have experienced close day-to-day contact with the child deserve consideration; moreover, an award of custody to such de facto parents is often among the alternate dispositions which the court must evaluate." (Id. at p. 693.)
(1c) Jackson stayed with Vanessa and her mother after Vanessa's birth. Vanessa's mother nominated Jackson as Vanessa's guardian. The Jacksons petitioned the probate court to be appointed guardians and to adopt Vanessa and were granted weekly visitation privileges by the juvenile court. Vanessa's mother was capable of determining who should care for her daughter in the event of her death. We therefore hold that nomination as a guardian by the deceased parent of a minor shall, unless abandoned by the nominee or denial of such appointment by the court after an appropriate hearing on the merits, entitles the nominee to de facto parent status. The Jacksons have standing to appeal and we deny respondents' motion to dismiss this appeal.

THE BEST INTEREST OF VANESSA
(4) The Jacksons argue the court erred by not terminating its jurisdiction, the best interests of Vanessa would be served by the juvenile court terminating its jurisdiction and allowing the matter to be heard in probate court, and the court erred when it failed to hold a section 388 hearing to terminate jurisdiction. We agree.
The Orange County Social Services Agency (SSA) makes light of this request noting that there should be no difference whether a judge sitting as a probate judge or family judge hears this rather than a judge sitting in juvenile court. Contrary to SSA's assertion, there is a difference. There is *1771 merit in the Jacksons' position, as demonstrated by the difficulty they encountered in having their position heard in juvenile court over the constant refrain from the court and respondents that they lacked standing to participate in the juvenile court proceedings, to examine the court file or even to prosecute the instant appeal. Even minor's counsel expresses the opinion that it would be in Vanessa's best interest for Jackson, the person nominated by Vanessa's mother as Vanessa's guardian, to be afforded the right to participate fully in all matters concerning her custody.
No party to this appeal disputes the fact that on July 20, 1994, Vanessa was a minor, "left without any provision for support...." (§ 300, subd. (g).) Hence, the court's initial determination that she was a dependent of the court was correct. Once the immediate needs of Vanessa were met, however, there was no reason for the juvenile court to continue maintaining jurisdiction. By needlessly maintaining jurisdiction, the juvenile court prevented Jackson from having her petition to be appointed guardian or alternatively to adopt Vanessa heard, since, when confronted with such petition, the probate court correctly deferred to the juvenile court.
The dependency statutes fail to address a situation where two relatives are seeking custody of an orphaned child. The broad powers statutorily conferred upon juvenile courts to declare a minor a dependent and continue to exercise jurisdiction of a minor, to the exclusion of the superior court (§ 300 et seq.), demonstrate that the juvenile court should have withdrawn from this matter earlier. There is no reason to determine whether parental rights should be terminated when the minor's parents are deceased and relatives are willing to accept responsibility for the orphan. The superior court should determine who should adopt or be appointed guardian of Vanessa and the juvenile court should confine itself to making temporary custody orders. Probate Code section 1514 requires issues of custody of the minor to be determined pursuant to the provisions in the Family Law Code. In cases involving the custody of an orphaned child, the matter is properly decided in superior court, rather than juvenile court, pursuant to the statutory scheme enacted to govern adoptions (Fam. Code, § 8600 et seq.), or the appointment of a guardian (Prob. Code, § 1514).
The purpose of dependency court proceedings is to reunite families. Upon a showing that such reconciliation cannot be accomplished, it must determine whether the minor should be adopted, have a guardian appointed or be placed in long-term foster care. (In re Taya C. (1991) 2 Cal. App.4th 1, 7 [2 Cal. Rptr.2d 810].) The juvenile court proceedings to terminate the parental rights of Vanessa's parents constituted a non-event. The juvenile court's order shall be vacated.
*1772 We are mindful that the Johnstons have had custody of Vanessa for almost a year and may have an advantage in any subsequent adoption proceedings. Although we sympathize with the Jacksons' predicament, this court is unable to turn back the clock. However, the Jacksons shall not be prejudiced by any findings or orders the juvenile court made.

DISPOSITION
We hold the Jacksons were entitled to de facto parents status to allow them to participate fully in the juvenile court proceeding. The case is remanded to grant appellants' section 388 petition with directions to terminate jurisdiction, and to vacate all prior orders, except that the juvenile court shall make any necessary short-term, emergency custody orders.
Sonenshine, Acting P.J., and Crosby, J., concurred.
A petition for a rehearing was denied November 13, 1995, and the petition of defendants and respondents for review by the Supreme Court was denied January 31, 1996.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.