Filed 12/1/25  In re F.T. CA4/2
See dissenting opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re F.T., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E084576 |
| Plaintiff and Respondent, | (Super.Ct.No. DPSW2200034) |
| v. | OPINION |
| C.K. et al., | |
| Appellants; | |
| D.R., | |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  Kelly L. Hansen, Judge.

Dismissed.

Jack A. Love, under appointment by the Court of Appeal, for Appellants.

1

John L. Dodd, under appointment of the Court of Appeal, for Respondent D.R.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel for Plaintiff and Respondent Riverside County Department of Public Social Services.

## INTRODUCTION

C.K. and S.K. (the caregivers) appeal from the juvenile court's denial of a Welfare and Institutions Code[1] section 388 petition concerning F.T. (the child). We dismiss the appeal for lack of standing.

## PROCEDURAL BACKGROUND

On August 16, 2022, the Riverside County Department of Public Social Services (DPSS) filed a petition alleging that the child came under section 300, subdivision (b), due to issues with her parents, A.P. (mother) and A.T. (father), including substance abuse, unresolved mental health issues, and father's child welfare and criminal history.[2]

At the time of the child's detention, the maternal grandmother, D.R. (MGM), expressed interest in placement, but she was scheduled to have back surgery and would be hospitalized for some time. The MGM reported that she cancelled her surgery, and she requested placement. However, DPSS said the child had already been placed in the caregivers' home. So, the MGM went ahead with her surgery and said she would pursue placement after being cleared by her doctor.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother and father are not parties to this appeal.

2

On October 18, 2022, the court sustained allegations under section 300, subdivision (b) and declared the child a dependent. The court bypassed reunification services for father but ordered them for mother.

In November 2022, the MGM again asked to have the child placed in her care. DPSS referred the MGM for assessment via Resource Family Approval in January 2023, and she was subsequently live scanned. DPSS indicated that if the child failed to reunify with mother, the child's permanent plan would be adoption by the current caregiver or the MGM.

C.K., the child's current caregiver, filed a request for de facto parent status. The court granted the request on February 13, 2024.[3]

On February 13, 2024, the court held a hearing, terminated mother's reunification services, and set a section 366.26 hearing. DPSS advised the caregivers of the plan to place the child in the care of a family that was able to provide permanency.

*Section 388 Petitions*

On May 14, 2024, the caregivers filed a section 388 petition requesting the court change the order made at the detention hearing, which placed the child with them as foster parents. They alleged this was a "general" placement order and requested the court to deem the placement with them a "direct" placement; they also asked that "any consideration of moving the child be placed on calendar for a noticed hearing." As to

---

[3] We note the record appears to show that only C.K., not S.K., applied for de facto parent status. Thus, only C.K. was granted de facto parent status.

changed circumstances, the caregivers alleged they were the child's de facto parents, and "[n]ow, the agency has apparently assessed a relative, who is interested in placement and the agency is considering disrupting a child's placement after being placed with [them] for almost 21 months." As to best interests of the child, the caregivers alleged that it would be in the child's best interests to remain in her current placement, as they had an emotional bond with her, and "there [was] no relative preference at this juncture." In a brief filed in support of the section 388 petition, the caregivers further requested that they be designated as prospective adoptive parents, with the plan of adoption.[4]

The social worker filed an addendum report on June 11, 2024, in response to the caregivers' section 388 petition. The social worker said the child was placed with the caregivers on August 13, 2022, and they were asking the court to change its general placement order from the detention hearing to a direct placement; they were also asking that any consideration of moving the child be placed on calendar at a noticed hearing. The social worker acknowledged the caretakers had met the needs of the child; however, as a certified foster home, they were aware that the initial case plan for the family was

---

[4] We note the dissent suggests that the caregivers' section 388 motion was limited to changing the child's placement from a general placement to a "direct placement" with them. Respectfully, we do not view the motion as so limited. The caregivers specifically requested that "any consideration of moving the child be placed on calendar for a noticed hearing." {CT 27} As to the best interests component of a section 388 motion, they argued that it would be in the child's best interests to remain in her current placement with them. In their brief in support of their motion, the caregivers asked that they be designated as prospective adoptive parents with the plan for adoption. {CT 69} Thus, the essence of this motion was a request for placement, not solely a change in their designation.

reunification. Further, if reunification was not possible, DPSS was working on a concurrent plan for the child by identifying relatives who were willing to provide a permanent home, and, once identified, DPSS could change the child's placement, if deemed to be in her best interests. The social worker reported that the MGM had been identified, and she was willing to adopt the child. The social worker explained that DPSS intended to place the child with her after the child's birth, but she was unable to take the child at that time. The social worker said the caretakers were aware throughout the dependency that the MGM was interested in providing the child with permanency. The social worker recommended placement with the MGM as being in the best interests of the child.

The record indicates that, on July 25, 2024, the MGM filed a section 388 petition to have the child placed with her. DPSS also filed a Notice of Intent to Remove the Child and place her with the MGM. We note that neither document is contained in the record on appeal.

On August 1, 2024, the caregivers filed a request for prospective adoptive parent designation and an objection to the removal of the child from their care.

The court held a hearing on August 30, 2024. County counsel noted that the hearing was calendared for multiple motions, including the caregivers' objection to the removal of the child from their home, the caregivers' request for prospective adoptive parent status, the MGM's request for de facto parent status, and section 388 petitions

5

filed by both the caregivers and the MGM.[5] County counsel stated that DPSS filed a notice of intent to move the child and place her in the care and custody of the MGM; thus, DPSS was in support of granting the MGM's section 388 petition and denying the caregivers' section 388 request not to move the child.

The court observed that when DPSS made its intention known that it wanted to change the child's placement from the caregivers to the MGM, "there was a domino effect of a bunch of motions being filed, so [it] seems . . . the primary issue is should this child be removed from the current caregiver and placed in the home of the maternal grandmother." The court stated: "I think all the issues flow from that. So as we address that issue, then many of these motions and JV-180s will be resolved."

County counsel explained that the MGM came forward immediately when the child was born, but things were delayed due to her medical situation. County counsel made clear that the MGM had consistently been a part of the child's life and consistently requested placement. County counsel said the MGM wanted to adopt the child, and she (counsel) believed the court should apply the relative preference factors under section 361.3.

The court acknowledged that the child was currently placed in a secure and loving home. However, it applied the section 361.3 factors, noting that the MGM had wanted placement of the child since the beginning of the case. The court determined that it would be in the child's best interests to be placed with the MGM; thus, it granted the

---

`     [5] The appellate record does not appear to contain the MGM's request for de facto parent status.

MGM's section 388 petition for placement and DPSS's request to transfer the child. The court denied the MGM's request for de facto parent status without prejudice and noted "[t]hat will have to occur after she's had significant time with the child." The court also denied the caregivers' request for prospective adoptive parents' status and their section 388 petition, finding their section 388 request was not in the child's best interests.

DISCUSSION

The Caregivers Have No Standing to Appeal

The caregivers argue that the court abused its discretion in denying their section 388 petition. They contend the evidence showed it was in the child's best interests to remain in their care, as they were "the only parent figures she had ever known." Thus, they are asking this court to reverse the denial of their section 388 petition and the removal of the child from their home. Respondent MGM asserts that the caregivers do not have standing to appeal the court's placement decision, and we agree.

"Under section 388, various parties, including the agency, may petition the court to change, modify or set aside a previous court order on the grounds of changed circumstances or new evidence. [Citation.] The petition shall set forth why the requested modification is in the best interests of the dependent child." (*In re M.V.* (2006) 146 Cal.App.4th 1048, 1057 (*M.V.*); § 388, subds. (a) & (b).)

In order for the caregivers to contest the court's order denying their section 388 petition and the order placing the child with the MGM, they must show they have standing to appeal. As previously noted, the record on appeal does not demonstrate that

7

S.K. applied for de facto parent status, although the briefs refer to C.K. and S.K. as the child's de facto parents. We will assume, without deciding, that the court granted them both de facto parent status for purposes of this opinion.

"Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose *rights or interests* are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236, italics added; see *In re P.L.* (2005) 134 Cal.App.4th 1357, 1361 (*P.L.*).) "Without standing there is no justiciable controversy for a court to entertain." (*P.L.*, at p. 1361.) "When an appellant lacks standing, the appeal is subject to dismissal." (*In re B.S.* (2021) 65 Cal.App.5th 888, 893 (*B.S.*).)

In *In re B.G.* (1974) 11 Cal.3d 679 (*B.G.*), the California Supreme Court established the right of de facto parents to "appear as parties" in dependency proceedings. (*Id.* at pp. 692-693.) However, "[d]e facto parents do not have the same substantive rights and preferences as parents or even legal guardians. [Citations.] De facto parents have no right to reunification services, visitation, custody, continued placement of the child [Citation], 'or to any degree of independent control over the child's destiny whatsoever' [Citation.]. De facto parent status 'merely provides a way for the de facto parent to stay involved in the dependency process and provide information to the court.'"

8

(*In re A.F.* (2014) 227 Cal.App.4th 692, 700.)[6] Notably, "[w]hile de facto parents are given an opportunity to participate in the proceedings, that status does not confer on them the right to continued placement of the dependent child in their home." (*M.V.*, *supra*, 146 Cal.App.4th at p. 1059.)

In *P.L., supra*, 134 Cal.App.4th 1357, a de facto parent appealed from a juvenile court order removing her foster child and placing the child in a prospective adoptive home. (*Id.* at pp. 1359-1360.) This court first reviewed the rights of de facto parents. "De facto parents have limited rights that include: (1) the right to an attorney; (2) the right to be present at hearings; and (3) the right to present evidence and be heard. Specifically, they do not have the right to reunification services, custody, or visitation. [Citations.] While de facto parents are given an opportunity to participate in the proceedings, that status does not give them the rights accorded to a parent or legal guardian." (*Id.* at p. 1361, italics omitted.) Based on these rights, we concluded that, "appellant has no legal standing to complain of the decision to place the child with the new prospective couple since she has no right to custody or continued placement as a mere de facto parent. The order changing physical custody was within the sound

---

[6] "In *In re Kieshia E.* (1993) 6 Cal.4th 68, the California Supreme Court clarified that a de facto parent's standing is limited by the *rationale* underlying the de facto parent doctrine itself: 'The de facto parenthood doctrine simply recognizes that persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding. *The standing accorded de facto parents has no basis independent of these concerns.*'" (*B.S.*, *supra*, 65 Cal.App.5th at p. 894.)

discretion of the court from which appellant cannot appeal because her legal rights were not impacted." (*Id.* at pp. 1361-1362.)

As in *P.L.*, the caregivers here, as de facto parents, have no legally cognizable interest in the placement of the child. Thus, they have no standing to appeal the court's order denying their section 388 petition or the order placing the child with the MGM. "While de facto parents may *feel* aggrieved and, no doubt, may be *emotionally* affected by court orders affecting the custody of a minor, a de facto parent has no standing to appeal a custody decision because they cannot show how their *legal* rights were injuriously affected." (*B.S., supra,* 65 Cal.App.5th at p. 897.)

In their reply brief, the caregivers attempt to distinguish *P.L.* by pointing out the factual differences between that case and the instant case. However, such factual distinctions do not make a difference. As de facto parents, the caregivers have no right to continued placement of the child in their home, and they have no legal standing to complain of the decision to place the child with the MGM. (*P.L., supra*, 134 Cal.App.4th at pp. 1361-1362; *B.S., supra*, 65 Cal.App.5th at p. 895; see also, *In re J.B.* (2025) 109 Cal.App.5th 133, 141 (*J.B.*) ["as a de facto parent she is not entitled to placement of Minor"].) It is clear from the record in this case that the caregivers are ultimately requesting placement of the child. They are seeking a court order that the child not be removed from their custody and placed with the MGM; however, they simply do not have the right to custody or placement of the child; thus, their legal rights have not been affected, and they have no standing to appeal. (*B.S., supra*, 65 Cal.App.5th at pp. 895,

897; *J.B.*, *supra*, 109 Cal.App.5th at p. 141 ["De Facto Parent has no standing to appeal the grant of the section 388 petitions"].)

Respectfully, we fail to see how filing a section 388 petition (as opposed to simply opposing such a petition) can accord greater rights to a de facto parent than those set forth by our Supreme Court in *B.G.* Otherwise, every de facto parent who seeks to retain custody of a child would simply file a section 388 petition and obtain rights beyond that contemplated by our Supreme Court. Since the de facto parents do not have the right to custody of the child, they are simply not aggrieved when custody of the child is placed elsewhere. (Cf. *In re Vincent M.* (2008) 161 Cal. App. 4th 943 (*Vincent M.*)[7]

 In sum, we conclude that the caregivers' status as de facto parents did not give them a right to custody or the child's continued placement with them. (*B.S.*, *supra*, 65 Cal.App.5th at p. 897.) Accordingly, they lack standing to appeal the denial of their section 388 petition and the removal of the child from their home. The appeal is dismissed for lack of standing. (*J.B.*, *supra*, 109 Cal.App.5th at p. 141 [this court dismissed de facto parent's appeal of the grant of section 388 petitions for lack of standing].)

---

[7] *In Vincent M.*, *supra*, 161 Cal. App. 4th 943, the court's majority held that the de facto parents had standing to the appeal of grant of the child's father's section 388 petition seeking presumed father status and reunification services. Justice Armstrong dissented, relying, in part, on this court's decision in *P.L.* and upon our Supreme Court's decision in *B.G.*, and concluded that the de facto parent did not have standing to appeal.

11

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS                        
                          J.


I concur:

McKINSTER                
                Acting P. J.

*[In re F.T.,* E084576]

RAPHAEL, J., dissenting.

The majority opinion holds that the de facto parents of the child F.T. lack standing to appeal from the denial of *their own* Welfare and Institutions Code section 388 petition. This may be the first case in which a court has held that a person lacks appellate standing to challenge the denial of their properly filed section 388 petition.

Contrary to this holding, we have jurisdiction to hear an appeal brought by de facto parents challenging the denial of their section 388 petition. Anyone who suffers the denial of such a motion is "aggrieved" under Code of Civil Procedure section 902 such that we may review the denial. Elsewhere, we have described such standing as "obvious." (*In re K.T.* (2019) 42 Cal.App.5th 15, 20.) I respectfully dissent to explain the basis for this appellate standing.

I

The appellants in this case are foster parents, Crystal and Shawn K., who had custody over the child since she was 15 days old in August 2022. About a year-and-a-half later, they sought a court order to become her de facto parents, and the court granted them that status on February 14, 2024.

Next, the de facto parents filed a section 388 petition. Section 388 is the Swiss-army-knife of dependency statutes. It allows any "person having an interest in a child" in a dependency to petition "to change, modify or set aside any order of [the] court" based on changed circumstances or new evidence. (Welf. & Inst. Code § 388, subd. (a)(1).)

1

Here, the de facto parents filed such a petition. They sought to change the trial court's order issued shortly after the child's birth that had placed her in a general placement with the county, meaning the county can choose where to place her without another court order. The foster parents sought a "direct placement" with them by the court. Unlike with a general placement where the county can move the child on its own, a direct placement requires the county to obtain court permission to move the child.[1] The new circumstance they alleged was that the child had been placed with them for "almost 21 months," and they noted "the emotional/psychological bonds that have been established. . . ." This was not a request for adoption nor to become a prospective adoptive parent, though it could serve as a precursor to such an effort.

This petition was squarely authorized by section 388. The de facto parents have an interest in the child, and they sought to change a court order based on changed circumstances. In fact, our Supreme Court has said about de facto parents: "[T]hey should be permitted to appear as parties to assert and protect their own interest in the companionship, care, custody and management of the child." (*In re B.G.* (1974) 11 Cal.3d 679, 693.) Further, our Supreme Court has stated that in ruling on a parent's

---

[1] The majority opinion misapprehends what a "direct placement" is by implying that the foster parents asked for something more than that placement by seeking to require the county to set a hearing if it wishes to move the child. (Maj. opn., *ante*, at p. 4, fn. 4.) That is the point of the direct placement. In contrast, under a general placement, the county may move the child as it wishes without a hearing. (See 16 Witkin, Summary of Cal. Law (11th ed. 2025) Juvenile Law, § 342, (3) & (4) [a court can "instruct the department to make a particular placement," but when a court instead issues "a general placement order," the county can move the child by giving notice to the minor's counsel, who decides whether to "request court assistance in rectifying a placement" that is harmful].)

section 388 petition, "courts may place great weight on evidence that after a substantial period in foster care, the severing of a bond with the foster parents will cause long-term, serious emotional damage to the child." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419.) In a case like this one, a trial court could grant the type of request for direct placement that these de facto parents made, as it has the power to order it. (*In re Robert A.* (1992) 4 Cal.App.4th 174, 189-190.) Here, though, the court denied their section 388 petition.

An order denying a section 388 petition is an appealable order. (*In re K.C.* (2011) 52 Cal.4th 231, 235-236; see Welf. & Inst. Code § 395, subd. (a).) In determining who can appeal from a dependency order, "we are required to 'liberally construe the issue of standing and resolve doubts in favor of the right to appeal.'" (*In re C.P.* (2020) 47 Cal.App.5th 17, 26, quoting *In re L. Y.L.* (2002) 101 Cal.App.4th 942, 948.) Like anyone who properly files but loses such a motion, de facto parents are "aggrieved" and thereby have standing to appeal. (See Code Civ. Proc. § 902 ["[a]ny party aggrieved may appeal"].) As our division has noted, when a section 388 petition is denied, it "should be obvious" that the filer is aggrieved and has standing to appeal the denial. (*In re K.T.*, *supra*, 42 Cal.App.5th at p. 20.)

In fact, our division has allowed de facto parents to appeal from the denial of a section 388 petition. (*In re A.F.* (2014) 227 Cal.App.4th 692.) In that case, we even reversed the trial court's denial. (*Id.* at p. 705.) If de facto parents are not aggrieved by the denial of a section 388 petition, then we acted without jurisdiction in that case; appellate standing is jurisdictional and cannot be waived. (E.g., *Conservatorship of*

3

*Gregory D.* (2013) 214 Cal.App.4th 62, 67.)

Other cases also have allowed de facto parents to appeal the denial of their section 388 petition. (*In re Daniel C.* (2006) 141 Cal.App.4th 1438; *In re Brittany K.* (2005) 127 Cal.App.4th 1497; *In re Joshua B.* (1996) 48 Cal.App.4th 1676; *In re Vanessa P.* (1995) 38 Cal.App.4th 1763.) Our division has even held that distant relatives who are not de facto parents have standing to appeal from the denial of their section 388 petition. (*In re K.T.*, *supra*, 42 Cal.App.5th at p. 20.)

The majority cites no case in which de facto parents—or anyone—has been denied appellate standing to challenge the denial of their own section 388 petition. The majority even emphasizes a case in which the Court of Appeal held that de facto parents had standing to appeal the grant of *another party*'s section 388 petition. (See maj. opn., *ante*, at p. 11, fn. 6; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 952.) The majority does so because it agrees with the dissent in that case. That dissent argued that the de facto parents in that case lacked standing to appeal from a ruling on a *different person's* section 388 petition that provided him "presumed father status and reunification services." (*In re Vincent M.*, *supra*, 161 Cal.App.4th at p. 963 (dis. opn. of Armstrong, J.).) Even if that dissent is correct, it would not mean that de facto parents lack standing to appeal from the denial of *their own* section 388 petition.

Similarly, the majority presents another case by asserting that it denies de facto parents standing to bring an appellate challenge to a ruling on a section 388 petition. (Maj. opn., *ante*, at p. 10.) But that framing is too loose. In that case, too, the parents

4

were attempting to appeal from the *grant* of *someone else*'s section 388 petition. (*In re J.B.* (2025) 109 Cal.App.5th 133, 138 [de facto parent appealed from grant of other parents' petitions, awarding them reunification services and visitation].) In yet another of the majority's cases, the de facto parents did not file a section 388 petition but appealed from an order placing the child with relatives, which they have no inherent right to appeal. (*In re B.S.* (2021) 65 Cal.App.5th 888, 893.)[2] None of these cases concern whether a de facto parent has standing to appeal from the denial of their own section 388 petition.

And the majority's principal case provides no indication that the de facto parent had filed any motion. In *In re P.L.* (2005) 134 Cal.App.4th 1357, 1360, the county had vetted and approved a couple to be adoptive parents of a child, and it set a selection and implementation hearing to provide time for the child to transition to their home. At that late point, the appellant obtained de facto parent status, and, at a hearing, requested to be assessed for adoption. (*Id*. at pp. 1360-1361.) The trial court did not change the placement with the already-approved couple. (*Id*. at p. 1361.) On appeal, *In re P.L.* held that the de facto parent lacked standing to challenge the placement decision. (*Id*. at pp. 1361-1362.) *In re P.L.* is correct on its terms, as de facto parents have no independent right to appeal rulings in a dependency case. (*In re Kieshia E.* (1993) 6 Cal.4th 68, 78.)

---

[2] *In re B.S.*, *supra*, 65 Cal.App.5th at p. 897 & fn. 2, further correctly suggests that de facto parents would have standing to make an appellate challenge to *their own* request for status as prospective adoptive parents. (*Ibid*.) At that stage, any appellate challenges are by extraordinary writ, but that is because of a need for rapidity not because of standing.

But when a de facto parent properly files a section 388 petition that meets the statutory requirements, they have standing to appeal the denial. Like anyone else, they are aggrieved in that situation.

The majority finds it significant that the de facto parents are "ultimately requesting" placement of the child. (Maj. opn., *ante*, at p. 10.) But all that matters for appealability is whether the order is appealable and whether the appellant has standing to appeal it; the appellant's strategy is not a jurisdictional concern. The majority also worries that appealing the denial of a section 388 petition gives a de facto parent "greater rights" than our Supreme Court contemplated. (Maj. opn., *ante*, at pp. 10-11.) In fact, it gives them the same appellate rights as anyone who has a section 388 petition denied. The majority there conflates jurisdiction with the merits; there is no reason to assume that appellants can obtain on appeal things that they lack a right to obtain. People other than de facto parents (including biological parents) file and appeal section 388 petitions that lack merit.

If, as here, a de facto parent petitions under section 388 for a change to a direct placement with them, they have standing to appeal the denial of that petition. The request is proper. It may be intended to help the de facto parents establish themselves as adoption candidates, but such an effort is permissible. (*In re B.G.*, *supra*, 11 Cal.3d at p. 693 [de facto parents may "assert and protect their own interest in . . . custody"].)

Indeed, when a foster parent simply seeks to be granted de facto parent status, they may do so out of a desire to become an adoption candidate, yet a foster parent has

6

standing to appeal a denial of their application for de facto status. (*In re Abigail L.* (2022) 75 Cal.App.5th 169; *In re Merrick V*. (2004) 122 Cal.App.4th 235; *In re Jacob E.* (2004) 121 Cal.App.4th 909.) Appealing the denial of a section 388 petition to change to a direct placement is quite similar in the way it can aggrieve the parent.

The simple rule that applies is that a de facto parent has standing to appeal from the denial of their own section 388 petition. This rule applies Code of Civil Procedure section 902, reconciles the cases, and treats de facto parents like everyone else who properly files a section 388 petition.

## II

I would affirm. Before the trial court ruled on the foster parents' section 388 petition, it ruled on a different motion, made by the maternal grandmother and joined by the county. After hearing evidence, the court ruled that F.T. was to be placed with maternal grandmother, stating that it "grants the Department's request to order placement with the maternal grandmother with adoption being the child's permanent plan." The court did not orally rule on the de facto parents' section 388 petition. Because that petition sought a change to a direct placement with them by the court, though, the placement with maternal grandmother denied their request. In a separate minute order, the court denied the de facto parents' section 388 petition.

The de facto parents appealed from the denial of their section 388 petition and the order removing F.T. In their opening brief, their single argument is that the trial court erred in denying their section 388 petition, which they recognize sought to have the court

7

change its prior order of general placement "to a specific placement" with them.

The de facto parents had a right to appear in trial court to provide evidence on the motion to have the child placed with maternal grandmother, but they have no right to appeal from that ruling. Once the trial court had ordered placement with maternal grandmother, the de facto parents' section 388 petition seeking a change to a direct placement was necessarily denied.

If there are any arguments the de facto parents could make on these facts that the process was erroneous, they do not make them in their opening brief. For that reason, I would affirm. My respectful dissent is meant to explain that de facto parents have standing to appeal the denial of their own section 388 petition, which could matter on different facts, though it leads to no different practical outcome here.

RAPHAEL       
J.